**Emil B. MILO, M.D., and Donald L. Reid, M.D., Plaintiffs–Appellants,**

v.

**CUSHING MUNICIPAL HOSPITAL, an Oklahoma non-profit corporation, d/b/a Cushing Regional Hospital, et al., Defendants–Appellees.**

**No. 86–1519.**

United States Court of Appeals, Tenth Circuit.

April 22, 1988.

D. Gregory Bledsoe (Cameron M. Spradling, of W.C. Sellers, Inc., Sapulpa, Okl., with him on the brief), Tulsa, Okl., for plaintiffs-appellants.

Dale Reneau (Robin A. Wiens, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., with him on the brief), of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendants-appellees.

Before HOLLOWAY, Chief Judge, and McKAY and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This case involves the question whether a hospital's suspension of a physician's medical staff privileges constitutes the requisite state action to support a claim under 42 U.S.C. § 1983. The City of Cushing (City) owns Cushing Municipal Hospital (Hospital). The City leases the Hospital to the Cushing Hospital Authority (Authority), a public trust created pursuant to Oklahoma law. The Authority has entered into an operating agreement with the Masonic Hospital Association, Inc. (Association), a private corporation which provides hospital management services. Under the contract, the Association operates the Hospital, including handling medical staff privilege and discipline matters.

The Hospital summarily suspended Drs. Milo and Reid. The physicians allege that the Hospital took this action because they reported misconduct by a fellow staff physician. In their section 1983 suit, the doctors claim that the Hospital's action infringed their rights to free speech and due process under the First and Fourteenth Amendments. The defendants are the Hospital, the Association, various members of the Boards of the Hospital and the Association, and the Hospital's administrator. The defendants claim that there was no requisite state action to support plaintiffs' section 1983 claims because the action was taken by the Association, not the City or the Authority. The district court granted the defendants' motion for summary judgment. Plaintiffs appeal. We reverse.

In deciding the state action issue, the district court applied the test set out by this court in *Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632 (10th Cir.1983). Application of the *Gilmore* test, however, is inappropriate because that case involved a different issue than the one presently before the court. *Gilmore* involved an employment decision by a community action agency organized under state law as a private nonprofit corporation. Thus the *Gilmore* court was called upon to determine whether the activity of a nominally *private* entity constituted state action; it was not necessary for the court to decide the preliminary question of whether the agency was a public or a private organization.

In the present case, the issue before the court is whether the hospital is public or private. In deciding whether an entity is public or private, we examine the structure of the entity and its relationship to a governmental unit. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In the present case, the City, the Authority, and the Association are all involved with the Hospital. The district court thoroughly examined the record and accurately described the relationship between the City, the Authority, and the Association regarding the Hospital.

In this case, it cannot be disputed that some kind of relationship exists between the City of Cushing and Cushing Municipal Hospital. There is evidence that the City of Cushing has substantially participated in the funding, creation, and financial structure of the Hospital. In 1973, the City of Cushing issued bonds to fund improvements and enlargement of the Cushing Municipal Hospital. In 1978, the City of Cushing issued bonds to retire the principal and interest on the bonds issued in 1973. The Cushing Hospital Authority ("Authority") was created pursuant to a Trust Indenture for the benefit of the City of Cushing and is governed by five Trustees. The Authority is a public trust and an agency of the State of Oklahoma pursuant to 60 O.S.A. § 176, *et seq.* (1981). The five Trustees governing the Authority are three City Commissioners and two members of the Masonic Association. The Hospital is leased by the City to the Authority for the operation and maintenance of the Hospital. Simultaneously with the creation of the leasing agreement the Authority executed an operating agreement with the Masonic Association. However, although the Masonic Association is responsible for the operation of the Hospital, it must utilize its revenues from operations according to the terms set forth in the 1978 Bond Indenture.

The City and the Authority have the typical, financially rewarding, lease/purchase agreement. The Hospital is leased by the City for a specified term or until all indebtedness of the Authority has been retired or a provision for payment made. To insure the financial stability of the Hospital, the City required the Authority to covenant in the 1978 Bond Indenture to establish rates and fees to attain net revenues in each fiscal year at a percentage of the average annual debt service requirements on all bonds issued for the City's initial funding of the Hospital. Further, upon an event of default under the terms of the leasing agreement, the bondholders would appoint a trustee or receiver; neither the bondholders, Trustee Bank, nor any trustee or receiver has the power to sell the property included in the Hospital. The City, as beneficiary under the Trust Indenture, has the exclusive option to purchase the Hospital in the event of a default. Similarly, any net earnings of the Authority may not inure to the benefit of any person other than the City, and the Authority was created under the Trust Indenture to accomplish one or more public purposes specifically enumerated in the Trust Indenture.

*Milo v. Cushing Mun. Hosp.*, No. CIV–84–2592–E, slip op. at 5–6 (W.D.Okla. Feb. 4, 1986).

In *Tarabishi v. McAlester Regional Hosp.*, 827 F.2d 648 (10th Cir.1987), this court addressed the question whether a hospital organized as a public trust under Oklahoma law was a public or a private institution. We noted that the enabling legislation providing for the creation of the hospital designates the hospital trustees as public officers acting as an agency of the state. In the absence of any dispute on the facts, we held that the hospital in *Tarabishi* was a public hospital as a matter of law.

The situation in the present case is very similar to the situation presented in *Tarabishi*. Both cases involve a public trust created under Oklahoma law. There are, however, differences between the two situations. The question we face is whether these differences dictate a different outcome. First, the Hospital in the present case was not *created* as a public trust and

is not owned by the Authority. Rather it was created by the City and leased to the Authority. This difference does not dictate a different outcome because the City is a governmental entity also, and whether the action of the hospital is attributed to the City or the Authority makes no difference because the actions of both constitute state action. *Burton*, 365 U.S. 715, 81 S.Ct. 856.

The second difference is more problematic. The Authority did not actually operate the hospital as was the case in *Tarabishi*. Here the Authority contracted with the Association, which is a private entity, to run the facility. The defendants argue that the suspension of the physicians' staff privileges was an action of the Association and not the City or the Authority. In *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214 (5th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988), the Fifth Circuit addressed a similar situation. In *Jatoi*, a hospital authority leased the facility to a private entity for day-to-day operations. The defendants alleged that the private entity controlled staff privilege matters and that the hospital authority had no involvement. The court noted that the hospital facilities were publicly owned and constructed with public funds. The hospital authority repaid bonds it had issued in part from hospital revenues and thus received a direct financial benefit from the private lessee. Although the lessee operated the hospital on a day-to-day basis, the hospital authority retained control of and responsibility for the facility. *Id.* at 1221. The court concluded that the hospital could not insulate itself from liability by delegating its responsibility to operate the hospital to a private entity.

> The Authority cannot benefit from private management of the hospital and at the same time insulate itself from liability for [a violation of section 1983] by that manager. The private defendants cannot receive public funds, utilize public facilities, and serve a public purpose, yet insist that their private status forestalls any connection of a violation of the constitutional rights of their medical staff.

*Id.* at 1221–22.

We find no significant difference between the facts of *Jatoi* and the facts of the present case. If leasing a hospital to a private entity will not insulate state actors from liability, then merely contracting for day-to-day management will not accomplish this goal. The defendants cannot escape liability by delegating responsibility to another party. *See Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Burton*, 365 U.S. 715, 81 S.Ct. 856. We conclude that the Hospital is a public institution and its suspension of the plaintiffs' medical staff privileges constitutes the requisite state action to support a section 1983 claim. Therefore the district court erred in granting defendants' motion for summary judgment.

REVERSED AND REMANDED.