Gale NORTON and the State of Colorado; and Colorado Board of Social Services, n/k/a Colorado Board of Human Services, Petitioners,

v.

Jane C. GILMAN; Douglas Price, individually and in his official capacity as the Director of the Adams County Department of Social Services; Allen Murphy, individually and in his professional capacity; and Pauline Burton, individually and in her professional capacity, Respondents.

No. 96SC705.

Supreme Court of Colorado,
En Banc.

Nov. 24, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Deputy Attorney General, Timothy R. Arnold, Deputy Attorney General, Gregg E. Kay, First Assistant Attorney General, Beverly Fulton, Assistant Attorney General, Civil Litigation Section,

Tort Litigation, Vaughan & DeMuro, David R. DeMuro, Special Assistant Attorney General, Denver, for Petitioners.

Robert J. Loew, Adams County Attorney, Marlene T. Gresh, Howard Reinstein, Assistant County Attorneys, Brighton, for Respondents.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review *Gilman v. State*, 932 P.2d 832 (Colo.App.1996), in which the court of appeals reversed the trial court's grant of summary judgment in favor of the State of Colorado (the State) in a case involving the Colorado Governmental Immunity Act (the Act), sections 24–10–101 to –120, 7 C.R.S. (1997). The issue before the trial court was whether the State, by virtue of the Act, has an obligation to indemnify the director of the Adams County Department of Social Services (ACDSS) and two other ACDSS workers because they are the State's "public employees." The trial court held that the director and the workers are not "public employees" of the State within the meaning of the Act. The court of appeals disagreed, holding that because of the relationship between ACDSS and the State, the director and the workers are "public employees" of the State. We reverse.

## I.

In 1993, Jane Gilman (Gilman), a former employee of the ACDSS, sued the State, the Colorado Board of Social Services,[1] the Adams County Board of County Commissioners, ACDSS,[2] the Director of ACDSS (the director), and two of her supervisors at ACDSS (the supervisors), alleging various claims, including age and sex discrimination.[3] ACDSS, the director, and the two supervisors filed cross-claims against the State, arguing that it has an obligation under the Act to indemnify them for any judgments or costs of defense incurred as a result of Gilman's claims. The State moved for summary judgment against the director and the two supervisors.[4] The trial court granted the State's motion, finding that the director and the supervisors are not the State's "public employees." The court of appeals reversed, holding that because ACDSS is not separate and distinct from the State, the director and supervisors are "public employees" of the State.

## II.

Pursuant to the Act, the State may have an obligation to indemnify its employees when they are subjected to lawsuits as a result of their official duties. This obligation arises from the portion of the Act codified at section 24–10–110(1)(a)–(b)(I), 7 C.R.S. (1997), which provides in part:

(1) A *public entity* shall be liable for:

(a) The *costs of the defense of any of its public employees* ... where the claim against the public employee arises out of injuries sustained from an act or omission

1. After this case arose, a restructuring of the social services system merged the Colorado Board of Social Services into a newly created Colorado Board of Human Services. *See* § 26–1–102(1), 8 C.R.S. (1997); § 26–1–103(5), 8 C.R.S. (1997). Although the restructuring does not affect the substance of our decision, the names of state social services entities, statutes, and regulations were changed as a result. We refer to these entities, statutes, and regulations as they existed at the time the case arose.

2. Each county department of social services consists of (1) a county board of social services, (2) a county director of social services, and (3) the employees of the county department. *See* § 26–1–115(1), 8 C.R.S. (1997). Each county board is composed of the board of county commissioners for that county. The county commissioners perform their duties as the county board of social services separate and apart from their duties as

county commissioners. *See* § 26–1–116(1)(a), (3), 8 C.R.S. (1997).

3. Because Gilman brought the age and sex discrimination claims under two federal civil rights statutes—the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1985) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1994)—her claims were not barred by the Act. *See Martinez v. El Paso County*, 673 F.Supp. 1030, 1031 (D.Colo. 1987) (holding that the Act does not apply to claims based on federal civil rights violations).

4. The State, however, did not move for summary judgment against ACDSS. As a result, ACDSS's rights and obligations under the Act were not before the court of appeals and therefore fall outside the scope of our review.

of such employee occurring during the performance of his duties and within the scope of his employment . . . and

(b)(I) The *payment of all judgments and settlements of claims against any of its public employees* where the claim against the public employee arises out of injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of his employment. . . .

§ 24–10–110(1)(a)–(b)(I) (emphasis added). In this context, "public entity" means "the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." § 24–10–103(5), 7 C.R.S. (1997). The term "public employee" includes "an officer, employee, servant, or authorized volunteer of the public entity." § 24–10–103(4)(a), 7 C.R.S. (1997).

The director and the supervisors argue that the State, as a "public entity," has an obligation to indemnify them because they are "its public employees." The court of appeals held that because ACDSS is not separate and distinct from the State, the director and the supervisors are "public employees" of the State. *See Gilman*, 932 P.2d at 835. We disagree.

Although the court of appeals recognized that county departments of social services are functional divisions of the State for administrative purposes, it mistakenly concluded that county department employees, by virtue of this fact, are "public employees" of the State for purposes of the Act. *See id.* In the proceedings below, the court of appeals observed: "[C]ounty departments are functional divisions of the state department for the convenient administration of the state program and are not independent entities separate and distinct from the state." *Id.* Here, the court of appeals accurately describes the traditional relationship between the county departments and the State. *See Board of County Comm'rs v. State Bd. of Soc. Servs.*, 186 Colo. 435, 442, 528 P.2d 244, 247–48 (1974) (observing that the traditional role of the county is to act as an arm of the State for the convenient administration of

state government and to carry out the will of the State); *Nadeau v. Merit Sys. Council*, 36 Colo.App. 362, 365, 545 P.2d 1061, 1063 (1975) (describing county departments in similar terms).

However, this relationship is irrelevant in determining whether county department employees are "public employees" of the State for purposes of the Act. The relevant test comes from the Act itself, which defines a "public employee" as "an officer, employee, servant, or authorized volunteer of the public entity." *See* § 24–10–103(4)(a). In other words, "public employee" simply means "employee." Therefore, we look to the common law meaning of "employee" to determine whether the director or the supervisors are "public employees" of the State. *See Allen v. People*, 175 Colo. 113, 116, 485 P.2d 886, 887–88 (1971) (noting that the meaning of terms not specifically defined by statute may be determined by looking to the common law).

■ Under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance. *See Faith Realty & Dev. Co. v. Industrial Comm'n*, 170 Colo. 215, 220, 460 P.2d 228, 230 (1969); *Dumont v. Teets*, 128 Colo. 395, 397, 262 P.2d 734, 735 (1953); *Perkins v. Regional Transp. Dist.*, 907 P.2d 672, 675 (Colo.App.1995) (emphasizing that the right to control, not the fact of control, is the key consideration). Other relevant factors include the right to hire, *see Clark County v. State Indus. Ins. Sys.*, 102 Nev. 353, 724 P.2d 201, 202 (1986) (listing the right to hire as a factor), the payment of salary, *see Farmers' Reservoir & Irrigation Co. v. Fulton Inv. Co.*, 81 Colo. 69, 71, 255 P. 449, 449–50 (1927) (discussing compensation as a factor), and the right to dismiss, *see Faith Realty*, 170 Colo. at 220, 460 P.2d at 230 (considering the power to dismiss as a factor).

■ This list of factors is not exhaustive. Many factors may be relevant in determining whether a worker qualifies as an employee. *See* Restatement (Second) of Agency, § 220(2) (1958) (listing ten factors). However, each factor need not be discussed in every

case. *See Carter v. Helmsley–Spear, Inc.*, 71 F.3d 77, 85 (2d Cir.1995); *see also Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir.1992) (noting that the list of common law factors is easily misapplied when rigidly construed). Instead of applying the common law factors as a rigid test, we consider the circumstances of each case. *See Farmers' Reservoir*, 81 Colo. at 71, 255 P. at 449; *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705, 711 (1997). Therefore, we analyze the employee status of the director and the supervisors using only the most relevant factors.

## A.

■ Applying the factors set forth above, we conclude that the director is not an employee of the State. Most importantly, the State does not have the right to control the director's performance. Nearly all ACDSS workers are supervised under a state-established merit system, which governs the selection, retention, and promotion of county department employees.[5] *See* § 26–1–120(1), 11B C.R.S. (1991 Supp.). The director, however, is exempt from the state merit system. *See* § 26–1–117(1), 11B C.R.S. (1989). As a result, the director serves under the supervision of the county board. *See* Rule 2.032A, 9 C.C.R. 2502–1 (1991) ("Directors shall be employees of the county boards.").[6] While the county board operates within the regulatory framework established by the State, the State is not involved in the daily operations of the board. *See* § 26–1–116(3), 8 C.R.S. (1997). Rather, the county board is a subdi-

vision of ACDSS and consists of the Adams County Board of County Commissioners. *See* § 26–1–115(1), 8 C.R.S. (1997); § 26–1–116(1)(a), 8 C.R.S. (1997). Thus, Adams County—and not the State—exercises control over the director's performance.

Other relevant factors confirm that the director is not an employee of the State. First, the power to hire the director clearly belongs to the county board. *See* § 26–1–117(1) ("It is the duty of the county board to appoint a county director."); *Colorado Dep't of Soc. Servs. v. Board of County Comm'rs*, 697 P.2d 1, 6 (Colo.1985) (stating that the county has the authority to choose its director). Second, the county board is primarily responsible for the director's salary.[7] Third, the county board has the power to dismiss the director. *See Martin v. District Court*, 191 Colo. 107, 108, 550 P.2d 864, 865 (1976); *see also* Rule 2.032A, 9 C.C.R. 2502–1 (1991) (directing the county boards to adopt policies regarding the dismissal of their county directors).

The county board not only controls the director's performance; it is also responsible for hiring, paying, and dismissing the director. These circumstances demonstrate that the director is not a state employee. Hence, the director is not a "public employee" of the State for purposes of the Act.

## B.

■ For similar reasons, we conclude that the supervisors are not employees of the

---

5. At the time this case arose, the state merit system governed almost all county department employees. *See* § 26–1–120(1), 11B C.R.S. (1989). Currently, the state merit system is being phased out and replaced by merit systems operated by the individual county departments. *See* § 26–1–120(1), 8 C.R.S. (1997).

6. The merit system's administrative rules and regulations are codified in the Colorado Code of Regulations. *See* 9 C.C.R. 2502–1 (1994).

7. The county board has complete discretion in setting the salary of the director. *See* § 26–1–117(1). Moreover, the county board directly funds 20% of the director's salary. *See* § 26–1–122(1)(a), (3)(c), 11B C.R.S. (1989 & 1993 Supp.).

The director argues that the State has complete authority over his salary. The State, however, merely advances part of ACDSS's administrative costs, which may include the portion of the director's salary not funded by the county board. *See* § 26–2–122(3)(b)–(c), 11 C.R.S. (1989 & 1993 Supp.). Furthermore, much of the State's funding ultimately comes from the federal government. *See Colorado State Bd. of Soc. Servs. v. Billings*, 175 Colo. 380, 384, 487 P.2d 1110, 1112 (1971) (noting that a substantial portion of the State's public welfare money comes from federal grants); *see also* § 26–1–123(2), 8 C.R.S. (1997) (listing the federal government as one of the State's primary funding sources). The county board, by contrast, independently sets and directly funds a portion of the director's salary. Therefore, we conclude that the county board is primarily responsible for the director's salary.

State. ACDSS, and not the State, plainly has the right to control the performance of the supervisors. The supervisors, as ACDSS workers, are governed by the state merit system. *See* § 26–1–119, 11B C.R.S. (1989). However, the merit system expressly authorizes ACDSS to set standards of conduct for its workers. *See* Rule 2.510, 9 C.C.R. 2502–1 (1987). ACDSS also evaluates the job performance of its workers. *See* Rule 2.520, 9 C.C.R. 2502–1 (1986). When necessary, ACDSS administers disciplinary action. *See* Rule 2.530, 9 C.C.R. 2502–1 (1986). These facts demonstrate that ACDSS possesses day-to-day control over the supervisors.

Other factors further support our conclusion that the supervisors are not state employees. The power to hire the supervisors, for instance, belongs to the county director and the county board. *See* § 26–1–119 ("The county director, with the approval of the county board, shall appoint such staff as may be necessary ... to administer public assistance and welfare."). In addition, the county has significant responsibility for the salaries of the supervisors.[8] Moreover, the county director, upon approval by the county board, has the power to dismiss the supervisors. *See* Rule 2.730, 9 C.C.R. 2502–1 (1992) ("A county appointing authority may separate with prejudice any employee."); Rule 2.740, 9 C.C.R. 2502–1 (1994) ("County appointing authorities may initiate layoffs.")[9]

Besides exercising daily control over the supervisors, ACDSS, through the county director and the county board, has authority over the hiring and dismissal of the supervisors. For these reasons, we conclude that the supervisors are not state employees. Hence, the supervisors are not "public employees" of the State within the meaning of the Act.

III.

Although ACDSS may be a division of the State for administrative purposes, the relationship between ACDSS and the State is not the proper test for determining whether ACDSS workers are "public employees" of the State for purposes of the Act. The correct test comes from the Act itself, which defines the term "public employee." Applying this definition, we hold that the director and the two supervisors are not "public employees" of the State. Therefore, we reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to reinstate the judgment of the trial court.

---

8. The county board directly funds 20% of the supervisors' salaries. *See* § 26–1–122(1)(a), (3)(c). Furthermore, the merit system, which governs the salaries of ACDSS workers, provides ACDSS with discretion to establish specific salaries for its workers within the framework of the system, set salary increases and bonuses, and develop overtime policies. *See* Rule 2.221, 9 C.C.R. 2502–1 (1994) (establishing specific salaries); Rule 2.222, 9 C.C.R. 2502–1 (1991) (salary increases and bonuses); Rule 2.245, 9 C.C.R. 2502–1 (1990) (overtime policies).

9. As discussed above, the supervisors are appointed by the director, with the approval of the county board. *See* § 26–1–119. Therefore, the county director and the county board, as the "appointing authority," share the power to dismiss the supervisors.