Ellsworth WALKER, Virgil Salazar,
and Charles Gayles, Plaintiffs,

v.

BOARD OF TRUSTEES, REGIONAL
TRANSPORTATION DISTRICT and
Amalgamated Transit Union Division
1001 Pension Fund Trust; Regional
Transportation District and Amal-
gamated Transit Union Division 1001
Pension Fund Trust; Rosemarie Sny-
der; Michael Rucker; Gregg Fisher;
Lloyd Mack; Larry Sorget; Earl Ni-
chol, Trustees, Defendants.

No. 98–B–2585.

United States District Court,
D. Colorado.

Dec. 13, 1999.

Robert L. Liebross, Denver, CO, for Plaintiffs.

Timothy J. Parsons, Dean C. Heizer, Morgan A. Word, Gorsuch, Kirgis, LLP, Denver, CO, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

Defendants move pursuant to Rules 12(b)(1), and 12(b)(6) to dismiss plaintiff's first, second, and third claims, and part of the fourth. Defendants also move pursuant to Rule 12(c) for judgment on the pleadings with respect to the same claims. The motions are adequately briefed and oral argument will not materially aid their resolution. For the reasons set forth below, I grant in part and deny in part defendants' motion to dismiss. I also dismiss Plaintiffs' claim brought under the Colorado Constitution. Jurisdiction exists under 28 U.S.C. § 1331.

**I.**

As a result of collective bargaining, the Regional Transportation District (RTD) and Amalgamated Transit Union Local 1001, the union representing RTD's hourly workers (Union), created the Amalgamated Transit Union Division 1001 Pension Fund Trust (Trust). The Trust "holds assets of the [Amalgamated Transit Union Division 1001 Pension (Pension Plan) ] and pays pension benefits due under the [Pension] Plan." *Amended Complaint* at para. 5. The Pension Plan "is primarily funded by contributions from RTD." *Id.* at para. 15. The collective bargaining agreement also created a trust agreement that provides for a Board of Trustees (Board) to administer the Pension Plan. The Board is staffed by an equal number of individuals appointed by RTD and the union, and possesses the authority to amend, and fiduciary responsibility with respect to, the Pension Plan. *Id.* at paras. 4, 15.

RTD employed Plaintiffs "for many years" prior to their respective retirements. Since retirement, Plaintiffs have received payouts from the Pension Plan. On September 30, 1997, the individual Defendants acting in their capacities as members of the Board amended the Pension Plan, and applied the amendment retroactively resulting in a decrease in the amounts disbursed to Plaintiffs on a monthly basis.

The Board informed Plaintiffs of this change on July 22, 1998. The notification letter also advised Plaintiffs that they could request the Board to review its actions, but allegedly did not provide a description of the material or information upon which the review would be based as required by the Pension Plan. All Plaintiffs requested such review but the Board did not change its decisions with respect to their cases. On October 2, 1998, Plaintiffs filed this action in Colorado state court. On November 25, 1998, Defendants removed the action to this court.

## II.

### A.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart,* 39 F.3d 1105, 1110 (10th Cir.1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *F & S Construction Co. v. Jensen,* 337 F.2d 160, 161 (10th Cir.1964). If a Rule 12(b)(1) motion to dismiss merely challenges the sufficiency of the allegations in the complaint, the court must accept those allegations as true, *see Holt v. United States,* 46 F.3d 1000, 1002–1003 (10th Cir.1995), but "without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). Nevertheless, the burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

### B.

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *McHenry v. Utah Valley Hosp.,* 927 F.2d 1125, 1126 (10th Cir.1991) cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991) (quoting *Bishop v. Federal Intermediate Credit Bank of Wichita,* 908 F.2d 658, 663 (10th Cir.1990)), cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991). Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); accord *Meade v.*

*Grubbs,* 841 F.2d 1512, 1526 (10th Cir. 1988). In reviewing the sufficiency of the complaint, a court must presume that the plaintiff's factual allegations are true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); accord *Meade,* 841 F.2d at 1526.

12(b)(6) must be read in conjunction with Fed.R.Civ.P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–159 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). A court may not assume that a plaintiff can prove facts that it has not alleged, or that the defendant has violated laws in ways that plaintiff has not alleged. *Associated General California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

### C.

Defendants enjoy qualified immunity from § 1983 claims unless they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity defense "cannot be analogized to other affirmative defenses because of the interests implicated in suits against gov-

ernment officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir. 1988). The defense is only available to those defendants sued in their personal capacities. *See Moore v. City of Wynnewood,* 57 F.3d 924, 929 n. 4 (10th Cir.1995) ("the defense of qualified immunity only applies to [defendants] in [their] individual capacit[ies]"). *See also Mitchell v. Forsyth,* 472 U.S. 511, 556 n. 10, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (concurring/dissenting opinion of Justice Brennan) ("Of course, an official sued in his official capacity may not take advantage of a qualified immunity defense") (citing *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)).

### III.

### A.

Defendants claim they are immune from Plaintiffs' first claim for breach of fiduciary duty. Specifically, Defendants assert that they are either "public entities" or "public employees," as defined in C.R.S. § 24–10–103 of the Colorado Governmental Immunity Act (CGIA), and that a claim for breach of fiduciary duty sounds in tort. Defendants conclude that Plaintiffs' first claim must be dismissed.

■ As an initial matter, I note that while RTD is a "public entity" under the CGIA, *see Brock v. Nyland,* 955 P.2d 1037, 1040 (Colo.1998) (treating RTD as a "public entity"), the Union is not. I also note there is no Colorado or Tenth Circuit authority of which I am aware that addresses the question presented here: whether organizations created through collective bargaining between "public" and non-public entities, and the members of one of those organizations, are entitled to immunity under the CGIA. Consequently, I must construe the CGIA to determine whether Defendants are entitled to immunity. In so doing, I must give effect to the legislative

purpose underlying the CGIA, which should be determined, to the extent it can be, through analysis of the statute's plain language. *See Climax Molybdenum Co. v. Walter,* 812 P.2d 1168 (Colo.1991). If the statute's language is unambiguous, then the inquiry ends. *See Kane v. Town of Estes Park,* 786 P.2d 412, 415 (Colo.1990). Finally, I must heed the admonition that because it is a derogation of the common law, "[t]he CGIA's ... immunity provisions are subject to strict construction." *Walton v. State,* 968 P.2d 636, 643 (Colo. 1998).

■ I conclude that none of the defendants are entitled to immunity under the CGIA. As for the Trust and the Board, neither can be deemed a "public entity" under the CGIA. Indeed, neither is a "state, county, city and county, municipality, school district, special improvement district, [or any] other kind of district, agency, instrumentality, or political subdivision thereof," and because the Union is not a "public entity" under the CGIA, neither was created through *"inter* governmental contract or cooperation." C.R.S.A. § 24–10–103(5) (emphasis added). The CGIA's plain language thus unambiguously indicates that the Trust and its Board are not entitled to immunity.

■ Similarly, the individual members of the Board are not entitled to the CGIA's immunity. As an initial matter, even though RTD appoints half of the Board, it is not clear that any of the Board members are RTD employees. To the extent any are, while it is true they work for *a* "public entity," *see Brock,* 955 P.2d at 1040 (treating RTD as a "public entity"), and it may be true that they would not have been appointed to the Board but for their employment with RTD, the actions for which they are being sued were not undertaken pursuant to the "performance of [their] duties and within the scope of [their] employment" *for* RTD. C.R.S.A. § 24–10–105. As Plaintiffs contend, "the Board of Trustees, *and not RTD,* [is] the fiduciary and administrator of the plan and [has] the

responsibility and authority to manage and operate the plan." *Plaintiff's Response* at 4 (emphasis added). Because the members of the Board allegedly are obligated by law to act in the best interest of the Pension Plan irrespective of RTD's interests, the duties and responsibilities of the RTD-appointed members of the Board are distinct from those duties and responsibilities associated with their RTD employment. Consequently, a strict construction of the CGIA's immunity provisions leads to the conclusion that none of the defendants are entitled to immunity under the CGIA.

This result is consistent with the only Colorado case to address in depth the meaning of "public employee" as it is defined in the CGIA. *See Norton v. Gilman,* 949 P.2d 565 (Colo.1997). In *Norton,* the Supreme Court of Colorado held that "public employee" in the CGIA is synonymous with the common law meaning of "employee." *Id.* at 567. The Court then concluded that in determining whether an individual qualifies as "employee" the "most important factor . . . is the alleged employer's right to control the details of performance." *Id.* While other factors can be weighed in the determination, such as the right to hire, the payment of salary, and the right to dismiss, the common law factors should not be rigidly applied. *See id.* (citing *Farmers' Reservoir & Irrigation Co. v. Fulton Inv. Co.,* 81 Colo. 69, 255 P. 449 (1927)). Instead, only the factors that are most relevant to the circumstances of the case should be considered. *See id.* at 568.

Here, the most relevant factor is RTD's right to control the details of performance of the Board members. The other factors cited above-the right to hire, the payment of salary, and the right to dismiss-are not relevant here because this suit is brought against the individual Board members for actions undertaken in their roles as fiduciaries of the Pension Plan. To the extent any of the individual Defendants are employees of RTD, this suit does not allege that they undertook the challenged actions pursuant to their responsibilities as employees. Under the "right of control" test,

the facts alleged in the Amended Complaint indicate that, although RTD may be able to exercise some form of control over the Board members it appoints to the extent they are RTD employees, RTD has no *right* of control because the Board members are fiduciaries of the Pension Plan. *See id.* (citing the holding of *Perkins v. Regional Transportation District,* 907 P.2d 672, 675 (Colo.App.1995) that "the right to control, not the fact of control, is the key consideration"). Consequently, accepting the allegations in the First Amended Complaint as true, I conclude that the Board members in carrying out their duties as fiduciaries of the Pension Plan cannot be considered employees of RTD, and are thus not entitled to the CGIA's immunity.

## B.

### 1.

 Holding that defendants are neither "public entities" nor "public actors" as defined in the CGIA suggests that Defendants' actions may not constitute "state action." If that is the case, this court would not have subject matter jurisdiction over Plaintiffs' federal constitutional claim. Even though Defendants only explicitly raise this argument in a footnote in their reply brief, *see Defendants' Reply* at 5 n. 3, I am obligated to address this court's subject-matter jurisdiction *sua sponte. See Tafoya v. United States Department of Justice,* 748 F.2d 1389, 1390 (10th Cir. 1984) ("[i]nsofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, *sua sponte,* satisfy itself of its power to adjudicate in every case and at every stage of the proceedings."). For the reasons stated below, I find that the Board's decisions constitute state action.

 Initially, I note that there is no authority of which I am aware that requires me to find no state action on the basis of my conclusion that Defendants are not entitled to the CGIA's immunity. As a

result, I must analyze the "state action" question under the framework established by the Tenth Circuit in *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442 (10th Cir.1995). The most relevant test from that framework to the facts of this case is whether RTD, and thus the state, " 'has so far insinuated itself into a position of interdependence' " with the Board that a symbiotic relationship exists requiring recognition of RTD " 'as a joint participant in the challenged activity.' " *Id.* at 1451 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). There is "no bright-line rule for determining whether a symbiotic relationship exists between a government agency and a private entity." *Id.* Instead, the question is one of degree. *Id.* Nevertheless, in conducting the inquiry, the overriding concern is whether " 'the conduct allegedly causing the deprivation of [the] federal right' " was undertaken by "a person who may fairly be said to be a state actor" thus allowing the attribution of the conduct to the State. *Id.* at 1447 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

 I conclude that RTD and the Board have a symbiotic relationship that permits the fair attribution of the Board's conduct to the state. The Colorado General Assembly created RTD as "a political subdivision of the state," C.R.S.A. § 32–9–119(1)(a), and requires it to engage in mandatory collective bargaining. *See Regional Transp. Dist. v. Colorado Dept. of Labor*, 830 P.2d 942, 947 (Colo.1992) ("the General Assembly ... amended the Labor Peace Act to provide RTD employees with the benefits of mandatory collective bargaining and dispute resolution mechanisms"). Further, as a result of the mandatory collective bargaining, RTD and the Union created the Board to administer the employee Pension Plan to which RTD contributes. Under these circumstances, because the State mandated that one of its "political subdivisions" engage in the collective bargaining process that created the Board, it is only fair that the State should

be held responsible for the Board's decisions.

This result is consistent with the Tenth Circuit authority that is most closely on point. *See Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194 (10th Cir.1988). *See also Carnes v. Parker*, 922 F.2d 1506 (10th Cir.1991). In *Milo*, an Oklahoma city established a public trust to oversee a hospital, and the trust entered into an operating agreement with a private corporation. The plaintiffs, who were suspended hospital physicians, brought suit against the private corporation and various officials of both the hospital and the corporation. *See Milo*, 861 F.2d at 1195. In its decision, the Tenth Circuit noted, *inter alia*, that the trustees were three city commissioners and two representatives of the private corporation, and the trust was created for the "operation and maintenance of the hospital." *Id.* at 1196 (citing with favor the District Court's decision). Although the suit was not brought against the city or the trust, the Tenth Circuit held that the city "could not insulate itself from liability by delegating its responsibility to operate the hospital to a private entity." *Id.* at 1197. *See Carnes*, 922 F.2d at 1509 (finding state action in virtually identical circumstances).

Here, as previously noted, the Board is comprised of equal number of individuals appointed by RTD and the union, and "manages the operation and administration of the [Pension] Plan." *First Amended Complaint* at para. 4. In addition, because the suit is brought against both the Trust and the Board, both of which were created as a result of a statutorily mandated collective bargaining process in which a "a political subdivision of the state" participated, C.R.S.A. § 32–9–119(1)(a), the relationship between the State and the challenged conduct in this case is no more attenuated than in *Milo* and *Carnes*. *See Milo*, 861 F.2d at 1197; *Carnes*, 922 F.2d at 1509. Both of those suits were brought against the private corporations that had contracted with the public trusts to administer the

hospitals. *See Milo,* 861 F.2d at 1197; *Carnes,* 922 F.2d at 1509. If it was fair to attribute the acts of the private corporations in *Milo* and *Carnes* to Oklahoma, it is fair to permit attribution here.

Finally, I recognize that it might seem perverse to find that an organization and its employees are not entitled to the CGIA's immunity because they are not "public" enough, as defined by the CGIA, but that they are bound by the U.S. Constitution because their decisions constitute "state actions." Nevertheless, it would be even more perverse to allow a state government to evade the requirements of the U.S. Constitution in administering its employee benefit programs by delegating those responsibilities, through collective bargaining or not, to a third party. *See Milo,* 861 F.2d at 1197 (concluding that the state "cannot escape liability by delegating responsibility to another party"). Holding that Defendants' actions cannot be attributed to the State would achieve that result. For the foregoing reasons, I find that the Board's decision constitutes state action.

### 2.

The individual Defendants next claim that they are entitled to qualified immunity with respect to the Constitutional claim brought pursuant to 42 U.S.C. § 1983 even if they are sued in their official capacities. In support, they claim that "it is not the capacity in which the Plaintiffs sued the [individual defendants], but the nature of the relief sought . . . that is relevant to the qualified immunity analysis." *Defendants' Reply* at 5. United States Supreme Court and Tenth Circuit authority indicate otherwise. *See Mitchell v. Forsyth,* 472 U.S. 511, 556 n. 10, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (concurring/dissenting opinion of Justice Brennan) ("Of course, an official sued in his official capacity may not take advantage of a qualified immunity defense") (citing *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Moore v. City of Wynnewood,* 57 F.3d 924, 929 n. 4 (10th Cir.1995)) ("the defense of qualified immunity only applies to [defendants] in [their] individual capacit[ies]").

For this reason, I deny the motion to dismiss the claim brought pursuant to 42 U.S.C. § 1983.

### C.

 I next address whether an implied private right of action exists to enforce Article II, Section 25 of the Colorado Constitution. Although Defendants have not addressed this issue, I must address it *sua sponte* because it implicates the subject matter of this court. *See Tafoya,* 748 F.2d at 1390. For the reasons stated below, I find that under the circumstances of this case there is no such right.

As an initial matter, I note that Colorado law does not contain the statutory equivalent to 42 U.S.C. § 1983. *Id.* at 1390. In addition, the Colorado Supreme Court held in *Board of County Commissioners of Douglas County v. Sundheim,* 926 P.2d 545 (Colo.1996) that implied private rights of action to enforce rights protected by the Colorado Constitution should not be recognized "where other adequate remedies exist." *Id.* at 1390. Here, Plaintiffs have adequate remedies available pursuant to § 1983 for violations of the United States Constitution and for breach of both contract and fiduciary duty, including damages. Under these circumstances, I decline to recognize an implied state constitutional cause of action, *Sundheim,* 926 P.2d at 553, and accordingly dismiss Plaintiffs' third claim for relief for violation of Article II, Section 25 of the Colorado Constitution.

### D.

The individual Defendants and the Board next contend that because Plaintiffs brought a claim under C.R.C.P. 106(a)(4), the challenged acts were undertaken in either a judicial or quasi-judicial capacity. Further, because they acted in either a judicial or quasi-judicial capacity, the individual Defendants and the Board argue that they are entitled to absolute judicial immunity, thus requiring the dismissal of all claims against them. I disagree.

■ The fact that Plaintiffs have brought an action under C.R.C.P. 106(a)(4) does not mean that Defendants are entitled to quasi-judicial immunity. Instead, such immunity is only appropriate if (1) the officials' functions are similar to those involved in the judicial process; (2) the officials' actions are likely to result in damages lawsuits by disappointed parties, and (3) there exist sufficient safeguards in the regulatory framework to control unconstitutional conduct. *See Horwitz v. Colorado State Board of Medical Examiners*, 822 F.2d 1508, 1513 (10th Cir.1987). Here, the first prong is not satisfied because, based on the allegations in the *First Amended Complaint*, it appears that the Board did not hold a hearing, or otherwise gather evidence in a judicial-like process in determining whether to decrease the pension benefits of Plaintiffs. For this reason, the functions of the individual Defendants can in no way be considered "similar to those involved in the judicial process." *Horwitz*, 822 F.2d at 1513.

This outcome is not inconsistent with Tenth Circuit authority. In all of the cases in which the Tenth Circuit has found a quasi-judicial function, the individuals who invoked the immunity served on an entity that conducted hearings at which the plaintiffs were permitted to present their cases. *See, e.g., Atiya v. Salt Lake County*, 988 F.2d 1013, 1017 (10th Cir. 1993); *Horwitz v. Colorado State Board of Medical Examiners*, 822 F.2d 1508, 1509 (10th Cir.1987); *Vakas v. Rodriquez*, 728 F.2d 1293, 1294–95 (10th Cir.1984). *See also Devous v. Campbell*, 1994 WL 7111 (10th Cir.1994) (unpublished opinion). Absent such a key component of the judicial process, the functions of the individual Board members cannot be considered quasi-judicial in nature. The individual defendants, therefore, are not entitled to absolute immunity.

### F.

■ Defendants next claim that the part of Plaintiffs' fourth claim that seeks mandamus relief pursuant to C.R.C.P. 106(a)(2) must be dismissed. I agree. In

*Sherman v. City of Colorado Springs Planning Comm'n*, 763 P.2d 292, 295 (Colo.1988), the Colorado Supreme Court held that "mandamus is an extraordinary remedy" that "is available only when no other adequate remedy is available." *Id.* at 295. Relief pursuant to C.R.C.P. 106(a)(4) is just such an "other adequate remedy." *See id.* ("[I]f certiorari review under C.R.C.P. 106(a)(4) is available, a mandamus action would not be appropriate"). Consequently, because Plaintiffs have brought a claim under C.R.C.P. 106(a)(4) to which Defendants do not specifically object, the C.R.C.P. 106(a)(2) claim must be dismissed.

Accordingly, I ORDER that:

(1) Defendant's Rule 12(b)(1) and 12(b)(6) motion to dismiss is GRANTED IN PART and DENIED IN PART;

(2) Plaintiffs' third claim for relief pursuant to Article II Section 25 of the Colorado Constitution, and that part of Plaintiffs Fourth Claim that seeks relief pursuant to C.R.C.P. 106(a)(2), are DISMISSED.