Elbert BRADLEY, Plaintiff,

v.

HEALTH MIDWEST, INC., Defendant.

Case No. 02–2115–JWL.

United States District Court,
D. Kansas.

May 23, 2002.

Lawrence B. Franklin, Kansas City, MO, for Elbert Bradley.

Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, Maureen A. Mannion, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Overland Park Regional Medical Center, Health Midwest Inc.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Elbert Bradley filed suit under 42 U.S.C. § 1983 alleging that defendant Health Midwest, Inc.'s decision to deny plaintiff's counsel access to plaintiff, when his counsel attempted to visit him at a hospital, violated plaintiff's constitutional rights, including his Sixth Amendment right to effective assistance of counsel, his First Amendment right to freedom of speech and his First and Fourteenth Amendment rights to access to the courts.[1] The matter is currently before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 8) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendant's motion to dismiss is retained under advisement. Plaintiff will be permitted to file a second amended complaint on or before June 7, 2002.

## I. Background

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court considers only the facts pled in the plaintiff's complaint. According to plaintiff, on February 27, 2002, he was taken into custody by the Leawood, Kansas Police Department, transported to the Overland Park Regional Medical Center (OPRMC) and placed in the custody of defendant by the police. The same day, defendant placed plaintiff in the intensive care unit (ICU). Plaintiff alleges that from the day he was placed in ICU until March 11, 2002, defendant refused to place his name on the admitted patient list and also placed a police hold on him. On February 27, 2002, the Leawood Police Department began investigating plaintiff for felony forgery and sometime after that, but prior to March 9, 2002, plaintiff was charged by the State of Kansas with that crime. On March 9, 2002, plaintiff retained counsel. On the same day, plaintiff's mother called the hospital and informed defendant that plaintiff had an attorney who would be visiting plaintiff. Later that day, plaintiff's counsel, mother, girlfriend and cousin went to OPRMC and plaintiff's counsel informed defendant that he would like to see his client. Defendant refused to permit plaintiff's counsel access to plaintiff. Plaintiff's counsel was subsequently forced to leave the hospital while thereafter plaintiff's mother, girlfriend and cousin were allowed to visit plaintiff. Plaintiff alleges that defendant's actions in denying him access to his attorney caused

---

1. Two preliminary matters need to be addressed. First, although defendant's motion to dismiss initially included arguments that plaintiff had not complied with the service of process requirements of Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), defendant now concedes that the procedural deficiencies have been cured. Second, plaintiff filed a surreply. Under D. Kan. Rule 7.1(b), parties are permitted to file a dispositive motion, a response and a reply. Surreplies typically are not permitted. *Metzger v. City of Leawood*, 144 F.Supp.2d 1225, 1266 (D.Kan.2001). A surreply is particularly inappropriate here because plaintiff has not alleged, and the court does not find, that defendant raised new arguments in its reply. Thus, the court disregards the surreply.

him mental anguish, humiliation and embarrassment.

In response to these events, plaintiff filed a complaint in this court against OPRMC. Later, plaintiff filed an amended complaint substituting Health Midwest, Inc. as the defendant instead of OPRMC. In his complaint, plaintiff alleges that defendant, a not-for-profit organization, violated his First, Sixth and Fourteenth Amendment rights under the United States Constitution by denying him access to his attorney. Defendant now seeks to have the complaint dismissed for failure to state a claim upon which relief can be granted.

## II. Rule 12(b)(6) Standards

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992,

997, 152 L.Ed.2d 1 (2002) (quotation omitted).

## III. Analysis

Defendant seeks to have plaintiff's complaint dismissed for failure to state a claim under 42 U.S.C. § 1983 because defendant did not engage in state action and because plaintiff has failed to allege facts sufficient to support his three constitutional claims.

### A. State Action

Plaintiff's three constitutional claims are brought under § 1983. To state a cause of action on a § 1983 claim alleging a deprivation of constitutional rights, the plaintiff must show that he or she was injured as a result of state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Therefore, private conduct, "no matter how discriminatory or wrongful," does not fall under § 1983. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotations and citation omitted).

■ Defendant alleges that it is a private not-for-profit corporation that cannot be characterized as a state actor. Plaintiff disputes this conclusion, pointing out that he alleged in his complaint that defendant, Health Midwest, Inc.'s, actions constituted state action and were done under color of state law.[2] In further support of his position, plaintiff's papers cite two Tenth Circuit decisions where the court found that a defendant, a private entity that provided hospital management services, was a state actor. In *Milo v. Cushing Mun. Hospital*, 861 F.2d 1194 (10th Cir.1988), the court

---

**2.** Plaintiff's counsel is apparently under the mistaken belief that he may simply plead a conclusory allegation, such as pleading that the defendant acted under color of state law, to meet the notice pleading requirements imposed in federal court. To the contrary, the plaintiff must plead facts that support each of

his causes of action. The Tenth Circuit has stated that this court need not accept as true any conclusory allegations contained in the complaint. *Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).

held that conduct by a private entity that had a contract with a public trust to provide day-to-day hospital management services for a public city hospital was state action. *Id.* at 1195–97. Relying on *Milo*, the court in *Carnes v. Parker*, 922 F.2d 1506 (10th Cir.1991), similarly held that a private entity that contracted with a public trust, the County/City Authority, to provide hospital management services for a public county hospital was a state actor. *Id.* at 1509.

Defendant distinguishes the two Tenth Circuit cases plaintiff cited by noting that plaintiff has failed to allege that OPRMC is a municipal hospital or that the hospital is a privately managed public hospital. In further support of its position, defendant cites to several cases where private hospitals and a privately run nursing home were held to be purely private actors that did not engage in state action.

The court believes that plaintiff has alleged that defendant provides the day-to-day management for OPRMC by stating that defendant, Health Midwest, Inc., "is a Missouri non-for profit corporation, existing an[d] operating a hospital facility at ... Shawnee Mission, Kansas, Johnson County." Nonetheless, the court concludes that plaintiff's complaint is deficient because it fails to allege that OPRMC is a public or municipal hospital. Absent such an allegation, the Tenth Circuit decisions in *Milo* and *Carnes* are distinguishable

because both of those decisions involved public or municipal hospitals. Unlike public hospitals, courts have consistently held that decisions made or actions taken by private hospitals do not typically amount to state action. *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1011, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that "decisions made in the day-to-day administration of a nursing home" do not constitute state action); *Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir.2000) (holding that actions taken by a private hospital in providing medical care were not state actions for purposes of 42 U.S.C. § 1983); *Okunieff v. Rosenberg*, 166 F.3d 507, 507 (2d Cir.1999) (holding that involuntary commitment by private hospital and physicians in accordance with a state statute does not convert conduct into state action under 42 U.S.C. § 1983); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir.1999) (holding that a private hospital was not a state actor despite state regulation); *Wheat v. Mass*, 994 F.2d 273, 275–76 (5th Cir.1993) (holding that a hospital is not a state actor solely because of federal funding and state regulation).[3] Thus, it appears that if OPRMC is a private hospital, then its actions, and the actions of a private entity that manages the day-to-day operations of the hospital, would not be considered state action. *See, e.g., Asselin v. Shawnee Mission Medical Center*, 894 F.Supp. 1479, 1486–87 (D.Kan.1995) (dismissing plaintiff's complaint for failure to state a claim against

---

**3.** The court finds the Fifth Circuit decisions particularly significant because in *Milo*, 861 F.2d at 1197, the Tenth Circuit cited to the Fifth Circuit's decision in *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214 (5th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988), in support of its conclusion that a private entity that managed a public hospital engaged in state action. In *Yeager v. City of McGregor*, 980 F.2d 337 (5th Cir.1993), the court explains that *Jatoi* is the only Fifth Circuit case to hold that a hospital, or the private entity that man-

aged the hospital, engaged in state action. *Id.* at 342. The court in *Yeager* explained that *Jatoi* involved unique circumstances where the government authority owned the hospital, derived a direct benefit from the private entity's management of the hospital and, significantly, was in a position to prevent or control the racial discrimination alleged in the case. *Id.* Given the Fifth Circuit's reasoning and the Tenth Circuit's reliance on that reasoning, it is likely that the Tenth Circuit would hold that unless the hospital is public, a private entity managing the hospital is not a state actor.

Shawnee Mission Medical Center under § 1983).

Nonetheless, the court is not convinced that it is beyond a doubt that plaintiff can prove no set of facts in support of his allegation that defendant engaged in state action; therefore, the court will permit him to amend his complaint in the event that he is able to allege sufficient facts to support his position.[4]

### B. Constitutional Rights

Turning now to the merits of plaintiff's three constitutional claims, he alleges that defendant's action in denying him access to his attorney violated his Sixth Amendment right to counsel, his First Amendment right to free speech and his First and Fourteenth Amendment trial rights. Defendant seeks to dismiss plaintiff's complaint arguing that plaintiff failed to allege facts sufficient to support the three constitutional claims.

### 1. Sixth Amendment Right to Counsel

The Sixth Amendment to the United States Constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." In determining whether plaintiff's Sixth Amendment right to counsel was violated the court must consider: (1) when "adversary judicial proceedings" were initiated against plaintiff; and (2) after such proceedings were initiated against plaintiff, whether plaintiff "was denied the presence of counsel at a 'critical stage.'" *Nees v. Bishop,* 730 F.2d 606, 611 (10th Cir.1984).

■ The Supreme Court has explained that adverse judicial proceedings begin at the earliest of either a "formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb,* 532 U.S. 162, 167–68, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). Here, plaintiff has alleged that formal charges were brought against him and, therefore, he has put forth facts sufficient to satisfy the court that the first requirement is met. With regard to the second requirement, the Tenth Circuit has explained that a pretrial event constitutes a "critical stage" of litigation "when the accused requires aid in coping with legal problems." *Nees,* 730 F.2d at 611. The Supreme Court has stated that it has been responsive to Sixth Amendment right to counsel claims that "governmental conduct has rendered counsel's assistance to the defendant ineffective." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Based upon the Tenth Circuit's definition of "critical stage," the court does not believe that plaintiff's allegations are sufficient to support his Sixth Amendment claim. Plaintiff does not allege that he was denied counsel at any time where anything significant was occurring in his case. He did not have to attend a hearing nor was he interrogated by a government actor during the short period of time when he was deprived of the right to meet with his attorney. In *United States v. Rogers,* 899 F.2d 917 (10th Cir.1990), the Tenth Circuit held that "a routine post-conviction pre-sentence interview is not a 'critical stage' of the proceedings at which a defendant has a Sixth Amendment right to be represented by counsel." *Id.* at 919–20 n.

---

4. Specifically, plaintiff must allege facts that would permit the court to conclude that OPRMC is a public entity. The Tenth Circuit has explained that in determining whether an entity is public or private, the court must examine "the structure of the entity and its relationship to a governmental unit." *Milo,* 861 F.2d at 1196. The court would urge plaintiff to keep this standard in mind in deciding the necessary facts to plead if plaintiff determines it is feasible to file a second amended pleading.

7. If a pre-sentencing interview is not a critical stage of the litigation, then the court does not believe plaintiff's situation could meet that definition.

Moreover, this court has been unable to find a single case where the plaintiff was awarded money damages under a § 1983 claim for deprivation of the right to counsel. *See, e.g., O'Hagan v. Soto,* 523 F.Supp. 625, 630 (S.D.N.Y.1981) ("Admittedly, this court is unaware of any case in which money damages have been awarded for deprivation of the right to counsel."). Perhaps this is because the typical remedy for a violation of the Sixth Amendment right to counsel is that impermissibly obtained evidence is excluded. *United States v. Thurmond,* 1998 WL 163371, at *1 (10th Cir. Apr.8, 1998) (unpublished decision) ("Ordinarily, the remedy for a violation of a defendant's Sixth Amendment right to counsel is the exclusion at trial of any improperly obtained evidence." (citing *Massiah v. United States,* 377 U.S. 201, 207, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964))). In short, the court does not believe that plaintiff has put forth facts sufficient to support his Sixth Amendment right to counsel claim. The court will nonetheless permit plaintiff to amend his complaint in the event that he is able to allege sufficient facts to support this claim. With the facts alleged, the court is unable conclusively to say that it is beyond a doubt that plaintiff can prove no set of facts in support of his claim; however, the court does believe that it is very unlikely. In considering whether to file a second amended complaint, the court urges plaintiff to consider whether being denied counsel for a single day at a very early point in the litigation can constitute a critical stage of the litigation, as defined by the Tenth Circuit.

### 2. First Amendment Right to Free Speech

■ Plaintiff's second claim states that defendant violated his First Amendment right to free speech. Plaintiff's complaint merely alleges that plaintiff's criminal defense was prejudiced by preventing plaintiff from speaking with his attorney. Plaintiff's complaint does not, however, allege how that defense was prejudiced or try to tie that prejudice in with the First Amendment right to free speech. The court is skeptical as to whether plaintiff can successfully set forth facts to support a cognizable claim and would remind plaintiff of the potential for sanctions under Rule 11 for frivolous or groundless claims. Federal Rule of Civil Procedure 11(b)(2) (explaining that by signing a pleading the attorney is representing that the claim is "warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law"). Nonetheless, because defendant did not address this claim until its reply brief, the court will permit plaintiff to amend his complaint in the event that he is able to allege sufficient facts to support this claim.

### 3. First and Fourteenth Amendment Trial Rights

■ Plaintiff's third claim provides that defendant violated his First and Fourteenth Amendment rights to access to the courts. Again, plaintiff's complaint merely states that defendant's actions prejudiced his criminal defense without providing an explanation and without explaining how he was denied access to the courts. Moreover, plaintiff does not explain how his trial rights are implicated because, based upon the facts alleged, plaintiff was never required to go to court during the period of time when the alleged violation occurred. The court is very reluctant to permit this claim to go forward but like the free speech claim, because defendant did not address this claim until its reply

brief, the court will permit plaintiff to amend his complaint in the event that he is able to allege sufficient facts to support his claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss for failure to state a claim (Doc. 8) pursuant to Rule 12(b)(6) is retained under advisement. Plaintiff may file his second amended complaint on or before June 7, 2002. If he does not file an amended complaint on or before June 7, 2002, defendant's motion to dismiss will be granted in its entirety. If he does so file an amended complaint, the court will deny the pending motion (Doc. 8) without prejudice to defendant moving to dismiss the amended complaint.