Bradley Scott SEREFF, individually and as Personal Representative of the Estate of Jennifer Sereff, Elliott Sereff and Skylar Sereff, through their guardian father and next best friend, Bradley Scott Sereff, Plaintiffs–Appellees,

v.

Neil WALDMAN and David W. Steedle, Defendants–Appellants,

and

The City and County of Denver, and Denver General Hospital, n/k/a Denver Health Medical Center, Defendants.

Nos. 99CA1193, 99CA1497.

Colorado Court of Appeals, Div. III.

Dec. 7, 2000.

Rehearing Denied March 8, 2001.

Opinion by Judge NEY.

In this medical malpractice action, defendants, Neil Waldman, M.D., and David W. Steedle, M.D., appeal from the trial court's denial of their motions seeking dismissal of the claims brought against them by plaintiffs, Bradley Scott Sereff, individually and as personal representative of the estate of Jennifer Sereff, and Elliot Sereff and Skylar Sereff, through their guardian, father, and next best friend Bradley Scott Sereff. We affirm.

The deceased, Jennifer Sereff, was brought by ambulance to Swedish Medical Center on December 26, 1994, for treatment of severe, recurring, and worsening migraine headaches. Waldman administered a drug to alleviate her symptoms and shortly thereafter she began suffering seizures and became unresponsive. Waldman and Steedle attempted resuscitation, but she died without regaining consciousness.

Waldman, a resident-in-training, was enrolled in a residency program operated by Denver General Hospital (DGH) and was an employee of the City and County of Denver. The residency program was accredited by the Council for Graduate Medical Education.

Steedle was employed by Emergency Medicine Associates, P.C., a professional corporation comprised of private doctors. The corporation had an exclusive contract with Swedish Medical Center to provide emergency room physicians for its facility.

Steedle also held a clinical faculty appointment with the DGH residency program and was responsible for supervising Waldman during his care of the deceased.

Swedish Medical Center had entered an affiliation agreement with DGH, by which DGH agreed to provide Swedish Medical Center with resident physicians. The program provided that the residents would rotate through the emergency rooms of eight area hospitals, including Swedish Medical Center and DGH. Swedish Medical Center, along with the other participating hospitals, paid a portion of the cost of the salary of residents based on the number of residents assigned to the hospital.

Leventhal & Brown, P.C., Beth L. Krulewitch, Timothy G. Buxton, Denver, CO, for Plaintiffs–Appellees.

Carl R. Mangino, City Attorney, J. Wallace Wortham, Jr., Assistant City Attorney, Johnson, Ruddy McConaty & Sargent, P.C., Craig A. Sargent, Ann M. Thompson, Denver, CO, for Defendants–Appellants.

Dickinson, Everstine & Prud'Homme, Douglas E. Best, Denver, CO, for Defendants.

Plaintiffs brought this action asserting claims for negligence against Waldman, Steedle, Swedish Medical Center, and DGH.

Following the completion of certain discovery, Steedle filed a motion seeking a determination that he was acting as a public employee for purposes of the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2000, when he was supervising Waldman. The trial court agreed that Steedle was a public employee based on his appointment as a clinical faculty member in the DGH residency program.

Thereafter, Steedle moved to dismiss plaintiffs' claims against him for lack of subject matter jurisdiction under the GIA. He argued that his immunity under the GIA had not been waived because his activities did not fall within any of the immunity waiver provisions of the GIA.

Waldman also moved to dismiss plaintiffs' claims against him for lack of subject matter jurisdiction, arguing that his actions did not fall within the provision waiving immunity for the "operation of a public hospital."

In ruling on defendants' motions, the trial court found that the residency program was run by and based at DGH and that the conduct of Waldman and Steedle was part and parcel of their duties and responsibilities under the residency program. The court also found that Waldman and Steedle were furthering the purposes of DGH through their actions. Because is found a waiver of sovereign immunity under such circumstances, the trial court denied their motions to dismiss.

Steedle and Waldman then filed separate interlocutory appeals, pursuant to § 24–10–118(2.5), C.R.S.2000, which were consolidated into this appeal.

## I.

■ Both Waldman and Steedle contend that the trial court erred in determining that their actions constituted the operation of a public hospital for purposes of § 24–10–106(1)(b), C.R.S.2000. We disagree.

■ Whether a claim falls within one of the waiver of immunity provisions is an issue of subject matter jurisdiction to be determined by the trial court under C.R.C.P. 12(b)(1). *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). The plaintiff bears the burden of establishing subject matter jurisdiction under the GIA, which is an issue generally to be resolved by the trial court as trier of fact. *Capra v. Tucker*, 857 P.2d 1346 (Colo.App.1993). However, when, as here, the evidence is undisputed, the issue of subject matter jurisdiction is one of law. *See Swieckowski v. Fort Collins*, 934 P.2d 1380 (Colo.1997).

In interpreting the GIA, the supreme court has recently held that although the grant of immunity is to be strictly construed, the waiver provisions are to be deferentially construed "in favor of victims injured by the negligence of governmental agents...." *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998); *see also Corsentino v. Cordova*, 4 P.3d 1082 (Colo.2000) (confirming this standard).

Section 24–10–106(1)(b) provides that a public entity's immunity is waived for the "operation of a public hospital...." This provision also applies to the actions of public employees. *See* § 24–10–118(2)(a), C.R.S. 2000 (providing that a public employee may not assert immunity for injuries resulting from the circumstances specified in § 24–10–106(1), C.R.S.2000).

The term "operation" is defined as "the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public hospital...." Section 24–10–103(3)(a), C.R.S.2000.

The term "public hospital" is not defined in the GIA. However, it has been construed to mean "an institution or place where sick or injured persons are given medical or surgical care." *Plummer v. Little*, 987 P.2d 871, 874 (Colo.App.1999) (*cert. granted* October 19, 1999) (a county clinic that provided limited services, was not associated with a public hospital, and did not provide in-patient care, was not deemed a "public hospital" under the GIA).

It is undisputed that a primary purpose of the residency program was to provide train-

ing to doctors who had recently graduated from medical school. The program sought to attract highly qualified participants by offering them the opportunity to gain experience at emergency rooms at several different area hospitals. DGH benefited from the program by obtaining the services of these participants to assist with patient care. The record reflects that, at any given time, 15 out of the 34 residents enrolled in the program were working at DGH.

Additionally, because the program was operated out of DGH, the residents employed by DGH and certain supervisory physicians benefited from the protections afforded by the GIA. *See* § 24–10–103(4)(b), C.R.S.2000 ("public employee" includes any health care practitioner-in-training who is duly enrolled and matriculated in an educational program of a public entity and any health care practitioner holding a clinical faculty appointment at a public entity).

Under these circumstances, we agree with the trial court's determination that the residency program furthered the purposes of DGH and constituted the operation of a public hospital for purposes of § 24–10–106(1)(f).

## II.

■ Steedle next contends that the location of the alleged malpractice, at a private hospital rather than at DGH, precludes a determination that his conduct constituted part of the operation of a public hospital. We disagree.

As noted, providing multiple locations for the residents was intended to diversify their training and experience. DGH indirectly benefited from outside placement because, in theory, it obtained the services of residents who were better qualified and trained.

In amending the definition of "public employee" in 1987, Colo.Sess.Laws 1987, ch. 168, at 929–30, to cover "health care practitioners-in training" and supervisors who held clinical appointments with the public hospital when they were working at a nonpublic entity, the General Assembly obviously intended to extend the protections afforded by the GIA to these individuals when they were working outside a public hospital. To hold

that residents or supervisory physicians would enjoy absolute immunity from any negligence whenever they worked outside the public hospital would allow such individuals to practice medicine without regard to the applicable standard of care. Such a result obviously was not intended by the General Assembly.

## III.

■ Waldman separately contends that because he was engaged in the practice of medicine when treating Jennifer Sereff, his conduct does not fall within the "operation of a public hospital" for purposes of § 24–10–106(1)(b). He asserts that the practice of medicine and the operation of a public hospital are separate and distinct from one another and require separate licenses. Relying on *Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962) and *Rodriquez v. City & County of Denver*, 702 P.2d 1349 (Colo.App. 1984), he argues that because the hospital may not control the exercise of his professional judgment, and cannot be liable for any resulting negligence under a theory of *respondeat superior*, the operation of a public hospital does not include the practice of medicine. We are not persuaded.

In *Moon v. Mercy Hospital, supra,* the supreme court held that because a hospital does not practice medicine, it cannot be charged with careless and negligent performance of medical services by a doctor on its staff or employed by it as a resident physician. In *Rodriquez v. City & County of Denver, supra,* a division of this court followed the decision in *Moon,* holding that a hospital could not be held liable under the doctrine of *respondeat superior* for negligence of individual treating physicians engaged in a multi-year postgraduate residency program designed to perfect their skills in a particular specialty. Despite the fact that the physicians may not have been licensed to practice as private physicians in Colorado, the *Rodriquez* court concluded that the hospital lacked authority to control or dictate the professional judgment independently exercised by the physicians relative to diagnosis and treatment.

We conclude, however, that Waldman's argument confuses the question of whether immunity has been waived under the GIA, with the issue of who ultimately will be liable for any negligent conduct. As was noted in *Plummer v. Little, supra,* the primary purpose of a hospital is to provide medical or surgical care to sick or injured persons. Public hospitals could not provide such care without the actions of its public doctors.

Under Waldman's construction of § 24–10–106(1)(b), immunity would be waived only for the administrative functions of the hospital. Public doctors, and the public entities who employ them, would be immunized for any negligence resulting from the doctors' care of patients. As we noted in the previous section, this would lead to a result that clearly was not intended by the General Assembly.

Although under the holdings of *Moon v. Mercy Hospital, supra,* and *Rodriquez v. City & County of Denver, supra,* a public hospital may not be liable under the doctrine of *respondeat superior* for the negligence of its physicians, we note that § 24–10–110, C.R.S.2000, effectively does away with this limitation by providing that the public entity will be responsible for the costs of the public employee's defense as well as the payment of all judgments and settlements against the public employee. *See* §§ 24–10–110(1)(a) and 24–10–110(1)(b), C.R.S.2000; *see also Corsentino v. Cordova, supra* (noting that if an operator of an emergency vehicle speeds and endangers life or property, the public entity does not have immunity, but is liable for any claims against the operator).

Moreover, it is inconsistent to treat a public doctor as an independent contractor for purposes of *respondeat superior* liability, and as a public employee for purposes of immunity under the GIA. *Cf. Bernardi v. Community Hospital Ass'n,* 166 Colo. 280, 291, 443 P.2d 708, 713 (1968) (holding that hospitals should be liable in *respondeat superior* for the actions of employed nurses even though the hospital was not licensed to practice nursing, and noting that several jurisdictions "make no distinction in application of the rule of *respondeat superior* to hospitals between employed nurses and employed doctors").

In summary, we conclude that the actions of Waldman and Steedle fall within the operation of a public hospital for purposes of § 24–10–106(1)(b). Accordingly, the trial court did not err in finding that immunity had been waived under the GIA for their conduct.

In view of this determination, we need not address plaintiffs' other contentions that the trial court's order as to Steedle can be affirmed on the basis that he was not a "public employee" for purposes of the GIA and that the GIA, to the extent it would have barred plaintiffs' claims against Steedle, is unconstitutional.

The order is affirmed.

Judge KAPELKE and Judge DAILEY concur.