**Bradley Scott SEREFF, individually and as personal representative of the Estate of Jennifer Sereff; Elliott Sereff, through his guardian, father, and next friend, Bradley Scott Sereff; and Skylar Sereff, through her guardian, father, and next friend, Bradley Scott Sereff, Plaintiffs–Appellants,**

v.

**David W. STEEDLE, MD; Neil Waldman, MD; City & County of Denver; and Denver General Hospital, n/k/a Denver Heath Medical Center, Defendants–Appellees.**

No. 03CA1445.

Colorado Court of Appeals, Div. I.

Aug. 11, 2005.

Rehearing Denied Oct. 27, 2005.

Certiorari Granted Sept. 11, 2006.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2004.

* Justice EID does not participate.

Leventhal Brown & Puga, P.C., Timms R. Fowler, Anthony Viorst, Timothy G. Buxton, Denver, Colorado, for Plaintiffs–Appellants.

Johnson, McConaty & Sargent, P.C., Craig A. Sargent, Bradley G. Robinson, Glendale, Colorado, for Defendant–Appellee David W. Steedle, MD.

Cole Finegan, City Attorney, John Eckhardt, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee Neil Waldman, MD.

Dickinson Prud'homme Adams & Ingram, LLP, Douglas E. Best, Denver, Colorado, for Defendants–Appellees City and County of Denver and Denver General Hospital.

Opinion by: Judge HAWTHORNE.

Plaintiffs, Bradley Scott Sereff, individually and as personal representative of the estate of Jennifer Sereff; Elliot Sereff; and Skylar Sereff, appeal the trial court's judgment dismissing their case against defendants, David W. Steedle, M.D.; Neil Waldman, M.D.; the City and County of Denver; and Denver General Hospital (DGH). We affirm in part, reverse in part, and remand with directions.

This medical malpractice action arises from the death of Jennifer Sereff, the wife of Bradley Scott Sereff, and mother of Elliot Sereff and Skylar Sereff. The relevant underlying facts are set forth in a prior interlocutory appeal brought by Waldman and Steedle challenging the trial court's 1998 ruling that it had subject matter jurisdiction under the Colorado Governmental Immunity

Act (GIA), § 24–10–101, et seq., C.R.S.2004, to hear the action against them. *See Sereff v. Waldman,* 30 P.3d 754 (Colo.App.2000).

In *Sereff,* a division of this court held that the operation of a residency program out of DGH, in which Waldman was enrolled and Steedle acted as his supervisor, constituted the operation of a public hospital for purposes of waiving defendants' immunity under the GIA. The division also held that the location of the alleged malpractice, at a private hospital rather than at DGH, did not preclude a determination that the treatment provided to the deceased constituted part of the operation of a public hospital. Finally, the division rejected Waldman's contention that because the practice of medicine and the operation of a public hospital are separate and distinct from one another and require separate licenses, the operation of a public hospital for purposes of § 24–10–106(1)(f), C.R.S.2004, does not include the practice of medicine. In concluding that the actions of Waldman and Steedle fell within the operation of a public hospital, and that their immunity had been waived under the GIA, the division did not address plaintiffs' contention that the trial court's order as to Steedle could be affirmed on the basis that he was not a public employee for purposes of the GIA.

Plaintiffs had also filed a motion requesting the trial court to declare the GIA unconstitutional. In 1999, the court denied that motion.

After jurisdiction over the action was returned to the trial court from the interlocutory appeal, defendants moved for leave to deposit $150,000 in the registry of the court. They argued that under § 24–10–114(1)(a), C.R.S.2004, $150,000 constituted the maximum possible amount recoverable by plaintiffs from all defendants. The offer provided that if "any Appellate Court reverses this Court's determination that Dr. Steedle is a public employee, then Dr. Steedle, and these public Defendants hereby reserve the right to withdraw this deposit and reserve the right to proceed to trial on issues of liability, causation and damages." Defendants also moved for summary judgment on the issue of

the maximum amount recoverable under § 24–10–114(1)(a).

The trial court initially denied defendants' motion, finding that each wrongful death claimant sustains his or her own independent injuries for purposes of applying the damage limitations under the GIA. However, upon defendants' motion to reconsider, the trial court addressed the motion as a request for determination of a question of law under C.R.C.P. 56(h), reversed itself, and concluded that $150,000 was the maximum plaintiffs were collectively entitled to recover from defendants. The court then allowed defendants to deposit the $150,000 into the registry of the court. Thereafter, the court dismissed the action against defendants.

I.

■ Plaintiffs first contend that the trial court erred in finding that Steedle was a public employee for purposes of the GIA. We disagree.

The GIA defines a "public employee" as:

[A]n officer, employee, servant, or authorized volunteer of the public entity, whether or not compensated, elected, or appointed, but does not include an independent contractor or any person who is sentenced to participate in any type of useful public service. For the purposes of this subsection (4), "authorized volunteer" means a person who performs an act for the benefit of a public entity at the request of and subject to the control of such public entity.

Section 24–10–103(4)(a), C.R.S.2004.

As pertinent here, "public employee" is further defined to include the following:

Any health care practitioner employed part-time by and holding a clinical faculty appointment at a public entity as to any injury caused by a health care practitioner-in-training under such health care practitioner's supervision. Any such person shall maintain the status of a public employee when such person engages in supervisory and educational activities over a health care practitioner-in-training at a nonpublic entity if said activities are within the course and scope of such person's re-

sponsibilities as an employee of a public entity.

Section 24–10–103(4)(b)(II), C.R.S.2004.

Here, the record establishes, and it is not disputed by the parties, that Waldman participated in a residency program that was operated out of DGH and was known as the Denver Affiliated Regional Emergency Medicine (DAREM) program. It is also not disputed that Waldman was a public employee of DGH who was enrolled in the DAREM program and that he was acting in such capacity when he treated the deceased.

With regard to Steedle, the record establishes that he was the attending physician and that he was responsible for supervising Waldman at the time of the deceased's death. In addition, Steedle held a clinical faculty appointment with the DAREM program at that time. Although plaintiffs conceded in oral argument that Steedle was not a supervisor, the parties are bound by the law of the case that Steedle "was responsible for supervising Waldman during his care of the deceased." *Sereff, supra,* 30 P.3d at 755; *see People v. Roybal,* 672 P.2d 1003 (Colo.1983) (the pronouncement of an appellate court on an issue in the case presented to it becomes law of the case). We see no reason not to apply the doctrine. *See Vashone–Caruso v. Suthers,* 29 P.3d 339, 342–43 (Colo.App.2001) (a court may in its discretion decline to apply the doctrine if it determines that the previous decision is no longer sound because of, inter alia, legal or factual error).

Plaintiffs argue, however, that the record fails to establish that Steedle was "employed" by DGH. Rather, they contend that Steedle acted as an independent contractor and that he did not have an employment relationship with DGH because he was neither paid by DGH nor subject to its control. We are not persuaded.

In determining whether a supervisory employee constituted a public employee under the GIA, the supreme court has looked to the common law meaning of employee. *See Norton v. Gilman,* 949 P.2d 565 (Colo.1997). The court noted that under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance. The court noted that other relevant factors include the right to hire, the payment of salary, and the right to dismiss. *See Norton v. Gilman, supra; see also* Restatement (Second) of Agency § 220(2) (1958)(listing ten factors to consider).

Here, the record establishes that Steedle was employed by a private, professional corporation which staffed, with emergency room physicians, the private hospital where the deceased was treated. Steedle was paid by the corporation for his work at the hospital. However, Steedle was not paid a salary by DGH to supervise the residents placed at the hospital under the DAREM program. Nevertheless, the corporation for whom he worked was allowed to bill for any services provided by a resident when Steedle was acting as the attending physician. Thus, although Steedle did not receive a salary, it appears that he was indirectly compensated for his clinical faculty appointment.

With regard to whether Steedle was subject to DGH's control, the record reveals that a Memorandum of Understanding (MOU) governed the operation of the residency program at the private hospital where Steedle worked. The MOU set forth various responsibilities for the evaluation of faculty, the creation of guidelines to improve the teaching performance of attending physicians with substandard evaluations, the issuance of recommendations to the steering committee for the suspension of teaching privileges, and the formulation and implementation of a faculty development plan. The MOU provided that yearly evaluations would be conducted for each attending physician and that attending physicians who received below average evaluations would be subject to a process set forth in the faculty development guidelines.

Plaintiffs contend that the provisions set forth in the MOU do not give DGH any right of control over the details of Steedle's performance or his physical conduct as an attending physician. However, while these provisions may not give DGH the right to control Steedle's actions as a physician, they provide a mechanism by which Steedle's performance as a supervisory physician under

the DAREM program may be regulated. The MOU specifically provides that Steedle may be reviewed annually by the director of the DAREM program and that his faculty appointment may be suspended. Thus, the effect of this provision and others is to allow the director of the DAREM program to control Steedle's clinical faculty appointment.

Although plaintiffs argue that it is unfair and illogical to allow a doctor who is engaged in private practice to be covered by the GIA when the doctor is supervising a resident at a private hospital, this policy choice has been made by our General Assembly. Consequently, based on the foregoing, and the General Assembly's definition of "public employee" in § 24–10–103(4)(b)(II), we conclude that the trial court did not err in determining that Steedle was a "public employee" for purposes of the GIA.

## II.

■ In a related contention, plaintiffs argue that granting Steedle protection as a public employee violates their equal protection rights: they assert that no public purpose is served because any judgment against Steedle would be paid out of private, not public, funds. However, because Steedle is considered a public employee for his actions in supervising Waldman, he may be able to obtain reimbursement from the public entity for the costs of his defense and any judgment entered against him. See § 24–10–110, C.R.S.2004. In addition, there were no allegations that Steedle acted willfully or wantonly. Consequently, contrary to plaintiffs' argument, Steedle is not considered a private person for purposes of the GIA. Cf. Middleton v. Hartman, 45 P.3d 721 (Colo. 2002)(state employees do not enjoy sovereign immunity when they are sued in their individual capacities for willful and wanton conduct, because relief is sought from the individuals themselves rather than from the state treasury); Graham v. State, 956 P.2d 556 (Colo.1998)(noting that an important factor for determining whether a governmental entity is entitled to Eleventh Amendment immunity is whether the judgment against it would be paid from the state treasury).

Therefore, under the circumstances presented here, we conclude that the trial court's determination that Steedle is a public employee does not raise an equal protection issue. See Simon v. State Comp. Ins. Auth., 903 P.2d 1139 (Colo.App.1994)(court held that the fact that the state compensation insurance authority and the state compensation insurance fund were covered by the GIA, while private insurers were not, was not a denial of equal protection), rev'd on other grounds, 946 P.2d 1298 (Colo.1997); see also Lee v. Colo. Dep't of Health, 718 P.2d 221 (Colo.1986)(court held that the GIA provisions limiting the amounts recoverable by tort victims do not violate equal protection of the laws).

## III.

■ We also reject plaintiffs' contention that the DAREM program is not a public entity for purposes of the GIA. Although this precise issue was not expressly raised or addressed in the prior appeal, the division noted that because the DAREM program was operated out of DGH, the residents employed by DGH and certain supervisory physicians benefited from the protections afforded by the GIA. The division also concluded that the DAREM program, as well as the treatment of the deceased, constituted part of the operation of a public hospital. Implicit in these determinations is that the DAREM program was part of the operation of DGH, a public hospital and a public entity. Thus, although plaintiffs attempt to circumvent that determination by recasting the issue in this appeal, we conclude that the prior division effectively resolved it against plaintiffs. Therefore, we will not reexamine that determination here. See Perez v. Witham, 1 P.3d 262 (Colo.App.1999)(the law of the case doctrine is a discretionary doctrine based on the policy that prior rulings made in the same case generally are to be followed).

## IV.

■ Nevertheless, we agree with plaintiffs that neither the GIA nor the Wrongful Death Act limits their collective recovery to $150,000.

We review de novo a trial court's entry of summary judgment based upon its determination of a question of law pursuant to C.R.C.P. 56(h). Summary judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Backstreet v. Hopp & Flesch, LLC,* 107 P.3d 1022, 1024 (Colo.App.2004). Here, the parties do not dispute that no genuine issue of material fact exists as to this issue.

Section 24–10–114(1), C.R.S.2004, limits the amount that may be recovered from a public entity or employee. As pertinent here, it provides:

> The maximum amount that may be recovered under this article in any single occurrence, whether from one or more public entities and public employees, shall be:
> (a) For any injury to one person in any single occurrence, the sum of one hundred fifty thousand dollars;
> (b) For an injury to two or more persons in any single occurrence, the sum of six hundred thousand dollars; except that, in such instance, no person may recover in excess of one hundred fifty thousand dollars.

The word "injury" is defined as "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." Section 24–10–103(2), C.R.S.2004.

In determining whether a party's right to recover damages is limited under the GIA, the supreme court has analyzed whether the claim sought to be limited is considered a separate injury under the GIA. Using this analysis, the court has held that a wife's claim for loss of consortium arising from an automobile accident involving her husband constituted a separate injury, with its own separate limitation on recovery of damages, for purposes of the GIA. *See Lee v. Colo. Dep't of Health, supra.* Thus, the court determined that the wife could recover the maximum allowed under the GIA for her injuries and that her damages were not limited by the amount that her husband might recover for his injuries. Similarly, in *City of Colorado Springs v. Gladin,* 198 Colo. 333, 599 P.2d 907 (1979), the court held that damages to a single tract of property that was co-owned by two people did not constitute a single injury for purposes of the GIA. Rather, the court found that each owner suffered a separate injury and that each could recover the maximum amount allowed under the GIA for the injury.

Colorado's Wrongful Death Act, § 13–21–201, et seq., C.R.S.2004, authorizes the bringing of a wrongful death action against the party responsible for the death by certain listed survivors of a decedent. "Fair and just" damages may be recovered for "the necessary injury resulting ... to the surviving parties who may be entitled to sue," including economic damages and damages for noneconomic loss or injury, such as damages for grief, loss of companionship, pain and suffering, and emotional stress. *See* § 13–21–203(1)(a), C.R.S.2004; CJI-Civ. 4th 10:3 (1998); *see also Elgin v. Bartlett,* 994 P.2d 411 (Colo.1999)(court noted that the General Assembly has authorized claims for loss of consortium in wrongful death cases); Regina T. Drexler & Michael P. Matthews, *Calculating Net Pecuniary Loss under Colorado Wrongful Death Law,* 24 Colo. Law. 1257 (June 1995). Thus, recovery of damages under the wrongful death statutes flows from a separate injury to each of one or more survivors.

The wrongful death statutes also provide that there shall be only one civil action for the recovery of damages for the wrongful death of any one decedent. *See* § 13–21–203, C.R.S.2004. In addition, the statutes contemplate a single judgment for the recovery. *See* § 13–21–201(2), C.R.S. 2004 ("the judgment obtained in an action under this section"). The one civil action limitation reflects a legislative intent to prevent relatives of a decedent from instituting multiple, individual suits against the same defendant. However, the damages incurred by reason of the separate injuries to both the spouse of decedent and the decedent's other

heirs may be recovered. *See* CJI–Civ. 4th 10:3 n. 8 (1998) (citing *Pierce v. Conners,* 20 Colo. 178, 37 P. 721 (1894), and *Mosley v. Prall,* 158 Colo. 504, 408 P.2d 434 (1965): "the parenthetical phrase, 'and those the plaintiff represents,' should be given in order to make it clear the plaintiff is entitled to recover damages sustained by all those entitled to share in any judgment"); *Howlett v. Greenberg,* 34 Colo.App. 356, 360, 530 P.2d 1285, 1288 (1974) (decedent's children are real parties in interest, and it is implicit in statute that the surviving spouse will represent their interests). Nevertheless, any judgment obtained in a wrongful death action shall be divided among such heirs at law in the same manner as real estate is divided according to the statutes of descent and distribution. *See* § 13–21–201(2).

Here, the deceased's spouse and two children sought damages for the injuries they incurred as a result of her death. Although the wrongful death statutes require any damages caused by an injury to a spouse or an heir to be collectively sought in one civil action, we conclude that the separate damages incurred by a spouse or an heir entitled to share in the judgment may be included in the recovery in that action. Accordingly, because the spouse and each heir has suffered a separate injury under the Wrongful Death Act, and the GIA provides that each person who has suffered a separate injury may recover the maximum amount allowed under the GIA for that injury, *see Lee v. Colo. Dep't of Health, supra; City of Colorado Springs v. Gladin, supra,* we conclude that the limitations on damages set forth in the GIA should apply to each separate injury in a wrongful death action.

Thus, under the circumstances presented here, each plaintiff potentially could recover the maximum amount of $150,000 in damages in the wrongful death action, up to a collective limit of $450,000, subject, however, to any limitations imposed on such a recovery. *See, e.g.,* § 13–21–203(1)(a), C.R.S.2004 (limiting to $250,000 the total amount of noneconomic loss or injury that may be included in a recovery under the Wrongful Death Act); *see also Mitson v. AG Eng'g & Dev. Co.,* 835 F.Supp. 572, 575 (D.Colo.1993). For exam-

ple, if plaintiffs here collectively recovered $450,000, no more than $250,000 of that recovery could be for noneconomic damages.

Although defendants argue that plaintiffs have not proposed a mechanism by which their separate injuries may be measured, we note that the jury could be instructed to enter special verdicts determining the amount of economic and noneconomic damages suffered by each heir. *See Landsberg v. Hutsell,* 837 P.2d 205 (Colo.App.1992)(jury entered special verdicts assessing damages in a combined personal injury and wrongful death action). As noted, each award of damages to an heir would be subject to the limitations imposed by the GIA. These separate damage awards would then be aggregated, and pursuant to the wrongful death statutes, the aggregate award would be divided in accordance with the statutes of descent and distribution. *See* § 13–21–201(2).

Therefore, contrary to the trial court's determination, we do not interpret the one civil action requirement as restricting the amount of damages that may be obtained in a wrongful death action against a public entity or employee to be the maximum amount recoverable under the GIA for a single injury. Accordingly, we conclude that plaintiffs' damages should not have been collectively limited to $150,000.

## V.

In light of our reversal of the trial court's judgment as to the amount of damages recoverable by plaintiffs, we also reverse the court's judgment allowing defendants to deposit $150,000 into the registry of the court and then dismissing plaintiffs' claims. Additionally, insofar as we conclude that the case must be remanded to the trial court for reinstatement of plaintiffs' claims against defendants, we deny Steedle's request to file a sur-reply brief. Instead, we note that the arguments raised therein would more appropriately be made to the trial court on remand in determining liability and damages.

The judgment is affirmed as to the trial court's determinations that Steedle is a public employee and that the GIA is constitutional as applied to him; it is reversed as to the

trial court's determinations regarding the amount of damages that may be awarded to plaintiffs, defendants' deposit of $150,000 into the registry of the court, and dismissal of plaintiffs' claims against defendants; and the case is remanded to the trial court to reinstate plaintiffs' claims.

Judge MARQUEZ and Judge GRAHAM concur.