Patricia HENISSE, Plaintiff–Appellant,

v.

FIRST TRANSIT, INC., an Ohio corporation licensed to do business in Colorado; and Eric Victor Cotton, Defendants–Appellees.

No. 08CA0962.

Colorado Court of Appeals, Div. VII.

June 11, 2009.

Cook & Jeffress, P.C., Stephen H. Cook, Christopher W. Jeffress, Boulder, Colorado, for Plaintiff–Appellant.

Wood Ris & Hames, P.C., William A. Rogers, III, Brendan L. Loy, Mark J. Jachimiak, Denver, Colorado, for Defendants–Appellees.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge J. JONES.

Plaintiff, Patricia Henisse, was injured in an automobile accident when her vehicle was struck by a bus driven by defendant Eric Victor Cotton (the bus driver). She sued the bus driver and his employer, First Transit, Inc. The district court determined as a matter of law that the bus driver was also an employee of the Regional Transportation District (RTD), and therefore his potential liability was capped at $150,000 by virtue of the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, C.R.S. 2008. The court also determined that First Transit, which Ms. Henisse had sued solely on a theory of respondeat superior, could not be held liable for an amount greater than the bus driver's potential liability. Ms. Henisse appeals those rulings, as well as the district court's subsequent judgment dismissing her claims against defendants after First Transit deposited $150,000, the maximum amount of defendants' potential liability, into an interest bearing account for Ms. Henisse. We affirm.

## I. Background

At the time of the accident, the bus driver was driving a bus owned by RTD and operated by First Transit, which had contracted with RTD to operate certain of RTD's bus routes. While making a left turn, the bus driver turned in front of Ms. Henisse's car. Ms. Henisse's car struck the side of the bus. Ms. Henisse sustained significant injuries, and consequently filed suit against the bus driver and First Transit seeking compensation for those injuries. Ms. Henisse's complaint asserted a claim of negligence against the bus driver and a respondeat superior claim against First Transit.

Defendants filed a motion for determination of law under C.R.C.P. 56(h) requesting that the court (1) declare that the bus driver's liability, if any, is capped at $150,000 pursuant to section 24–10–114(1)(a) of the CGIA because he was a "public employee" (i.e., an employee of RTD); and (2) declare that First Transit's potential liability is also capped at $150,000 because its liability under the respondeat superior doctrine cannot exceed that of its responsible employee. Defendants also requested, pursuant to C.R.C.P. 67, leave to deposit $150,000 into an interest bearing account for Ms. Henisse's benefit, with payment conditioned on a favorable ruling for defendants on appeal, and dismissal of Ms. Henisse's claims upon deposit of the funds.

In response, Ms. Henisse argued that the CGIA does not limit her potential recovery because First Transit is an independent contractor of RTD and First Transit's employees are not employees of RTD.

The court granted defendants' motion. The court determined that, for purposes of the CGIA, the bus driver, although an employee of First Transit, was also an employee of RTD, and therefore, the bus driver's maximum potential liability under the CGIA is $150,000. The court further determined that, because under the doctrine of respondeat superior the employer's liability cannot be greater than that of its employee, First Transit's maximum potential liability is also $150,000. The court granted defendants' request to deposit $150,000 into an interest bearing account for Ms. Henisse, subject to defendants' prevailing in any appeal brought by Ms. Henisse. After defendants deposited the funds, the court dismissed Ms. Henisse's claims with prejudice.

## II. Limitation on Defendants' Liability

Ms. Henisse contends that the district court erred in granting judgment as a matter of law in defendants' favor because (1) there

is at least a genuine issue of material fact as to whether the bus driver was an employee of RTD (and therefore a public employee), (2) the court effectively applied the CGIA to a private entity, First Transit, in derogation of the CGIA and public policy, and (3) she was entitled to conduct additional discovery on the issues raised by defendants' motion. We address, and reject, each of these contentions in turn.

### A. Standard of Review

C.R.C.P. 56(h) permits a party to move for a determination of a question of law at any time after all required pleadings have been filed. The rule expressly provides that the court may grant such a motion only if "there is no genuine issue of any material fact necessary for the determination of the question...."

■■■ We review an order granting a motion for a determination of a question of law under Rule 56(h) de novo. *Hopp & Flesch, LLC v. Backstreet,* 123 P.3d 1176, 1180–81 (Colo.2005); *Snook v. Joyce Homes, Inc.,* 215 P.3d 1210, 1214 (Colo.App.2009). In so doing, we apply the same standards that governed the district court's determination of the motion. *See Smith v. Boyett,* 908 P.2d 508, 514 (Colo.1995). Thus, in determining whether a genuine issue of material fact exists, we bear in mind that the nonmoving party is entitled to all inferences that reasonably may be drawn from the undisputed facts, and we must resolve any doubt as to the existence of a genuine issue of material fact in the nonmoving party's favor. *See West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 480–81 (Colo.2002) (applying summary judgment standards to a Rule 56(h) motion). In this context, a material fact is one which would affect the outcome of the case. *Western Innovations, Inc. v. Sonitrol Corp.,* 187 P.3d 1155, 1158 (Colo.App.2008).

### B. Public Employee

The CGIA governs the extent to which public entities and public employees may be found liable to another in tort. As relevant here, the CGIA waives immunity for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by [a] public entity, by a public employee while in the course of employment ...." § 24–10–106(1)(a). When immunity is waived, "[t]he maximum amount that may be recovered under this article in any single occurrence, whether from one or more public entities and public employees, shall be ... the sum of one hundred fifty thousand dollars." § 24–10–114(1)(a).

■■■ The parties agree that RTD is a public entity under the CGIA. *See Brock v. Nyland,* 955 P.2d 1037, 1040 (Colo.1998) (RTD is a public entity), *overruled on other grounds by Finnie v. Jefferson County School Dist. R–1,* 79 P.3d 1253 (Colo.2003). They also agree that RTD owned the bus that the bus driver was driving at the time of the accident. The parties disagree, however, whether the bus driver was a public employee within the meaning of the CGIA. The district court concluded as a matter of law that the bus driver was a co-employee of both First Transit and RTD, and we agree with that conclusion.

The CGIA defines a public employee as "an officer, employee, servant, or authorized volunteer of the public entity ...." § 24–10–103(4)(a). The CGIA does not define the term "employee." Therefore, we apply the common law meaning of the term. *Norton v. Gilman,* 949 P.2d 565, 567 (Colo.1997); *Sereff v. Steedle,* 148 P.3d 192, 195 (Colo.App.2005), *rev'd on other grounds,* 167 P.3d 135 (Colo. 2007).

■■■ "Under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance." *Norton,* 949 P.2d at 567; *see Allen Co., Inc. v. Indus. Comm'n,* 762 P.2d 677, 681 (Colo.1988) (use of only those materials supplied by the employer to perform the work evidences control); *Landis v. McGowan,* 114 Colo. 355, 371, 165 P.2d 180, 187 (1946) (a worker is the employee of the person who has the right to control not merely the result, but also the progress and details of the work and the manner in which it is to be performed); *Dana's Housekeeping v. Butterfield,* 807 P.2d 1218, 1220 (Colo.App. 1990) (the most important factor in determining whether a person is an employee is the right to control, not the fact of control). A strong indication of the right to control is the employer's right to terminate the relation-

ship with the worker without liability. *Perkins v. Regional Transp. Dist.*, 907 P.2d 672, 674–75 (Colo.App.1995). Other relevant factors include the right to hire, the payment of a salary, and the right to dismiss. *Norton,* 949 P.2d at 567; *see also* Restatement (Second) of Agency § 220 (1958) (listing ten factors).[1] These factors are not exhaustive, but in analyzing whether a person is an employee of a particular entity, we need only address the most relevant factors. *Norton,* 949 P.2d at 568.

■ The fact a person is an employee of one employer does not preclude a determination that he is also an employee of another employer for purposes of the CGIA. "[A] worker can simultaneously be the employee of two persons...." *Perkins,* 907 P.2d at 675; *accord Evans v. Webster,* 832 P.2d 951, 954 (Colo.App.1991).

■ The contract between First Transit and RTD states that First Transit is an independent contractor. It also provides that "[t]he personnel performing services under the contract shall at all times be under [Fist Transit's] exclusive direction and control and shall be employees of [First Transit] and not employees of RTD." However, "how the parties refer to themselves in their contract is not dispositive," *Perkins,* 907 P.2d at 675; *see also* Restatement (Second) of Agency § 220 cmt. m ("It is not determinative that the parties believe or disbelieve that the relation of master and servant exists ....."), and we must therefore look to facts bearing on the nature of the parties' relationship in practice.

The following facts, all of which are established by the contract between First Transit and RTD, demonstrate that the bus driver was an employee of RTD:

- RTD has the right to require First Transit to remove any bus driver whom RTD considers unsuitable.
- First Transit bus drivers must perform according to the routes and schedules specified by RTD.
- First Transit may not implement changes to any aspect of its performance without written approval from RTD.
- RTD dictates numerous conditions of employment for First Transit bus drivers, such as drug and alcohol testing and minimum training requirements.
- First Transit bus drivers must set their communication radios to the RTD communications frequency and communicate with RTD dispatch personnel for all service-related communications, including when and if the bus driver is involved in an accident.
- The conduct of all First Transit bus drivers is governed, while in RTD service, by RTD's rules and regulations manual. Decisions regarding specific applications of the manual to First Transit bus drivers' actions rest with RTD.
- First Transit bus drivers must be familiar with the contents of RTD transportation bulletins, which supplement, clarify, and alter RTD's rules and regulations.
- First Transit bus drivers must comply with RTD's uniform and appearance requirements.
- RTD owns and supplies the buses and provides all materials and supplies needed under the agreement.
- RTD monitors the bus signage of all buses through the use of RTD street supervisors, management personnel, traffic checkers, and undercover ride monitors.
- All services performed by First Transit and its bus drivers are subject to RTD's inspection and testing.
- RTD may, at any time and without notice, change the services performed by First Transit bus drivers, or change the place of performance of services.

1. These ten factors are: (1) the extent of control that, by the agreement, the employer may exercise over the details of the work; (2) whether or not the worker is engaged in a distinct occupation or business; (3) whether the work, in the locality, is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer supplies the instrumentalities, tools, and the place of work; (6) the length of time for which the worker is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; and (10) whether the employer is or is not in business.

• RTD has the right to terminate the contract with First Transit at any time and for any reason, at RTD's convenience.

In *Perkins*, the court was presented with facts almost identical to those here. A passenger in an RTD-owned bus was injured when the driver made a sudden stop. The injured passenger sued the driver, and also sued RTD and Laidlaw Transit, Inc., the entity which leased and operated the bus, on theories of respondeat superior and negligent entrustment. *Perkins*, 907 P.2d at 673. The district court granted RTD's motion for summary judgment, ruling that the driver was not an employee of RTD. A division of this court reversed. The division concluded that for purposes of respondeat superior liability, the driver was an employee of RTD as a matter of law. *Id.* at 674–75. In so concluding, the division relied on several facts also present in this case, including: (1) RTD had the right to require Laidlaw to remove promptly any employee whom RTD considered unsuitable; (2) RTD had the right to terminate the contract with Laidlaw at any time and for any reason; (3) RTD could dictate numerous conditions governing Laidlaw's performance under the contract; (4) RTD owned and supplied the buses and all materials and supplies needed under the agreement; and (5) all services performed by Laidlaw were subject to RTD's inspection and testing. *Id.* at 675. The division concluded that this evidence demonstrated that RTD had the right to control the driver's work activities, "both directly through its right to require Laidlaw to remove any employee from any activity associated with the contract at RTD's request and indirectly through its right to control all aspects of Laidlaw's performance." *Id.*

 Ms. Henisse argues that *Perkins* is distinguishable because the division did not consider liability under the CGIA. However, as noted, in the CGIA context, the term "employee" is construed in accordance with the common law. In *Perkins*, the division applied the same common law test in the context of determining whether the driver was an employee of RTD for purposes of the doctrine of respondeat superior. Because the same test applies in both contexts, it is inconsequential that *Perkins* did not involve

a question under the CGIA: the result would have been the same if it had.

Citing *Veintimilla v. Dobyanski*, 975 P.2d 1122 (Colo.App.1997), Ms. Henisse asserts, however, that "[f]or purposes of construing the CGIA, a co-employee of a governmental entity and private entity is considered the employee of the private entity, and not a 'public employee' for purposes of the [CGIA]." *Veintimilla* does not stand for that broad proposition.

In *Veintimilla*, the Beaver Creek Resort Company (BCRC) entered into an agreement with the Town of Avon, whereby the Town would operate a shuttle bus service and BCRC would provide buses and other necessary equipment. *Id.* at 1122. The plaintiff was injured in an accident involving two buses. He sued BCRC and the driver of the Town's bus asserting negligence claims against both, though it appears the claim against BCRC was based on respondeat superior. *Id.* The district court dismissed the case, ruling that the plaintiff had no cause of action against BCRC because the driver was an employee of the Town, not BCRC, and therefore, immune from suit under the CGIA. *Id.* A division of this court reversed. The division concluded that, although BCRC had less control over the driver than RTD had over the driver in *Perkins*, it had sufficient control over the manner in which the driver performed his job duties to render it a co-employer of the driver. *Id.* at 1123–24. The division relied on the following facts: (1) BCRC provided all the equipment necessary for drivers to perform their jobs and specified the bus system policies, performance objectives, schedules, and routes; (2) the Town was required to hire employees in compliance with BCRC's affirmative action goals and to take prompt action to remedy any employee performance deemed inadequate by BCRC; and (3) BCRC had the right to terminate the contract with the Town at any time. *Id.*

Thus, the division in *Veintimilla* merely applied the common law test to determine whether the driver was an employee of the private entity. It did not opine on the extent of the employer's potential liability. Nor did it address the CGIA. Indeed, *Veintimilla*

supports First Transit's position in this case because the division in that case found an employer-employee relationship between the driver and the entity that occupied the position of RTD in this case, on facts that are less compelling than those present here.

■ We perceive nothing in the CGIA that prohibits an employee of a private entity from being regarded as a co-employee of a public entity and therefore also a public employee. Our primary task in construing the CGIA is to give effect to the General Assembly's intent. *Rosales v. City & County of Denver*, 89 P.3d 507, 509 (Colo.App.2004). We determine that intent by reviewing the statutory language in accordance with its plain and ordinary meaning. *Springer v. City & County of Denver*, 13 P.3d 794, 799 (Colo. 2000); *Podboy v. Fraternal Order of Police*, 94 P.3d 1226, 1229 (Colo.App.2004); *see Moran v. Standard Ins. Co.*, 187 P.3d 1162, 1165 (Colo.App.2008). If the statutory language is unambiguous, we need not resort to interpretive rules of statutory construction. *Springer*, 13 P.3d at 799; *Podboy*, 94 P.3d at 1229; *Rosales*, 89 P.3d at 509.

The relevant language of section 24–10–105, the section of the CGIA that grants immunity to public employees, is unambiguous: a public employee is simply an employee, as that term is generally understood, of a public entity. *Norton*, 949 P.2d at 567. There is nothing in the language of the CGIA which exempts co-employees of private entities from the limitation on liability accorded to such persons who are also co-employees of public entities. Though Ms. Henisse contends that regarding an employee of a private entity as a co-employee of a public entity creates an absurd result under the statute, we perceive no such absurdity.

We therefore conclude that the undisputed facts in this case establish as a matter of law that the bus driver was an employee of RTD, and was therefore a public employee within the meaning of the CGIA.

## C. Respondeat Superior

■ After ruling that the bus driver's potential liability was capped at $150,000 under the CGIA, the district court ruled that First Transit's potential liability for the bus driver's negligence was also capped at $150,000. Ms. Henisse contends that this result, in effect, improperly applies the CGIA to First Transit, a private entity. We disagree with this contention. The district court's ruling was based on settled principles of respondeat superior liability, not application of the CGIA to First Transit.

■ Under the doctrine of respondeat superior, an employer is vicariously liable for the acts of its employee committed in the course of the employee's employment. *Raleigh v. Performance Plumbing & Heating, Inc.*, 130 P.3d 1011, 1019 (Colo.2006); *Smith v. Multi–Financial Sec. Corp.*, 171 P.3d 1267, 1271 (Colo.App.2007); *see also* Restatement (Third) of Agency §§ 2.04, 7.03(2)(a), 7.07(1) (2006). The vicarious liability of the employer is only secondary liability—that is, the extent of that liability is dependent on and limited by the extent to which the employee is liable. *See Arnold v. Colo. State Hosp.*, 910 P.2d 104, 107 (Colo.App.1995); *Lathrop v. Healthcare Partners Med. Group*, 114 Cal. App.4th 1412, 8 Cal.Rptr.3d 668, 675–76 (2004). Therefore, with certain possible exceptions not asserted here,[2] an employer may raise any substantive defense that is available to the employee. *Lathrop*, 8 Cal. Rptr.3d at 675–76.

■ The doctrine of respondeat superior also limits the amount that can be recovered from the employer: the employer cannot be held vicariously liable for an amount of compensatory damages that exceeds the amount for which the employee is liable. *E.g., Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1124 (8th Cir.2006) (applying Missouri law); *Lathrop*, 8 Cal.Rptr.3d at 676; *Ponce v. Tractor Supply Co.*, 29 Cal.App.3d 500, 105 Cal.Rptr.

**2.** For instance, section 217 of the Restatement (Second) of Agency provides that "[i]n an action against a principal based on the conduct of a servant in the course of employment ... [t]he principal has no defense because of the fact that ... the agent had an immunity from civil liability as to the act." Restatement (Second) of Agency § 217(b)(ii) (1958). Ms. Henisse does not contend that the limitation on damages in section 24–10–114 is an immunity, and we observe that the Colorado Supreme Court has held that it is not. *City of Colorado Springs v. Gladin*, 198 Colo. 333, 336, 599 P.2d 907, 909 (1979).

628, 632 (1972); *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 656 A.2d 1009, 1022–23 (1995); *City of Hialeah v. Hutchins*, 166 So.2d 607, 609 (Fla.Dist.Ct.App.1964); *Jacobson v. Parrill*, 186 Kan. 467, 351 P.2d 194, 200 (1960); Restatement (Second) of Agency § 217B & cmt. d (1958); Restatement (Second) of Judgments § 51(2) & cmt. d (1982).

*Lathrop* is particularly instructive. In that case, three doctors employed by a private entity provided medical services to the plaintiff. After the plaintiff was diagnosed with cancer, she and her husband sued the employer and the three doctors, among others, alleging medical malpractice and loss of consortium. 8 Cal.Rptr.3d at 670–71. The case went to trial against the employer (but not the doctors) on a vicarious liability theory, and a jury found it fifty-eight percent at fault. *Id.* at 671. The employer then moved to reduce the jury's award of noneconomic damages to $250,000 pursuant to a statute which limited the amount and timing of recovery against "health care providers" in cases of professional negligence. The trial court found that the employer did not qualify as a "health care provider" under the statute, and therefore denied the requested relief. *Id.* at 672–74.

On appeal, the California Court of Appeal concluded that although the employer was not a "health care provider," the three doctor employees were. Because the employer's alleged liability was based solely on respondeat superior, the court concluded that the employer's liability could not exceed that of the doctors, as limited by the statute. *Id.* at 674–79.

Here, Ms. Henisse did not assert any claim against First Transit for primary liability. Her only claim against First Transit was for vicarious liability for the bus driver's negligence, under the doctrine of respondeat superior. First Transit's potential liability, as a co-employer of the bus driver, is therefore limited to the potential liability of the bus driver, $150,000. *Cf. Muniz v. Garner*, 921 F.Supp. 700, 702–03 (D.Colo.1996) (because the allegedly negligent employee qualified as a public employee under the CGIA, and the plaintiffs' only claim against the employer was under the doctrine of respondeat superior, the CGIA's liability limit applied to the employer).

This result is mandated by a straightforward application of the common law doctrine of respondeat superior. In effect, Ms. Henisse contends that there is an exception to that doctrine when a limitation on the amount of the employee's liability (i.e., a damages cap) is a result of the application of a statute which the employer, if it had been sued directly for its own conduct, could not invoke. She cites no authority, however, recognizing such an exception, and we are not aware of any.

Ms. Henisse does cite cases in which divisions of this court have held that private entities are not public entities for purposes of the CGIA merely because they may contract with public entities to provide public services. *Moran*, 187 P.3d at 1164–66 (rejecting claim that private entity was an "instrumentality" of a public entity within the meaning of section 24–10–103(5)); *Robinson v. Colo. State Lottery Div.*, 155 P.3d 409, 413–14 (Colo.App.2006) (same), *aff'd in part and rev'd in part on other grounds*, 179 P.3d 998 (Colo.2008); *Podboy*, 94 P.3d at 1229 (rejecting claim that private entity was a "separate entity created by intergovernmental contract," and therefore a "public entity," within the meaning of section 24–10–103(5)). First Transit, however, does not claim to be a public entity, and these cases simply do not involve the issues before us, much less address them.

We also reject Ms. Henisse's argument that capping First Transit's liability at $150,000 contravenes public policy. She argues that such a limit will not save the taxpayers money and is inconsistent with the purpose of the CGIA "to protect public entities, not private for-profit corporations."

Again, the premise of this argument—that the CGIA, specifically, section 24–10–114, is being applied to First Transit—is erroneous. It is the doctrine of respondeat superior which applies to First Transit. Therefore, the purposes of the CGIA are essentially irrelevant to this analysis. Nonetheless, we perceive no conflict with the purposes of the CGIA.

The purposes of the CGIA are set forth in section 24–10–102. Essentially, the CGIA is intended to (1) strike a balance between the

need to compensate victims and the prospect of unlimited governmental liability, which could disrupt or make more expensive the provision of public services; (2) protect taxpayers from excessive financial burdens; and (3) protect public employees from the prospect of unlimited damages so as not to discourage them from providing public services. Permitting First Transit to invoke well-established principles of respondeat superior liability in these circumstances does not contravene any of these purposes. It results in no greater liability of the government or burden on the taxpayers, nor would it discourage public employees from providing public services.

Furthermore, numerous public services are provided by private entities and their employees pursuant to agreements with governmental entities. Indeed, at the time of the accident in this case, RTD was *required* to provide at least fifty percent of its vehicle services through "qualified private businesses through competitively negotiated contracts." Ch. 273, sec. 2, § 32–9–119.5(2)(a), 2003 Colo. Sess. Laws 1796; *cf.* § 32–9–119.5(2)(a), C.R.S.2008 (present requirement is fifty-eight percent). Refusing to apply the limitations on liability to persons who qualify as "public employees" merely because those persons are also co-employees of private entities would effectively discourage private entities from agreeing to provide public services.

In sum, we conclude that limiting First Transit's liability to that of the bus driver is required by the respondeat superior doctrine, does not apply the CGIA to a private entity, and does not contravene the purposes of the CGIA.

### D. Denial of Additional Discovery

Ms. Henisse contends in the alternative that the district court erred by denying her the opportunity to conduct additional discovery before entering judgment for defendants. We perceive no abuse of discretion.

In responding to defendants' motion under C.R.C.P. 56(h), Ms. Henisse requested, pursuant to C.R.C.P. 56(f), that she be permitted to conduct additional discovery before the court ruled on the motion. Her request was accompanied by her attorney's affidavit. The court did not rule on that request before granting defendants' motion, thereby effectively denying it.

Rule 56(f) provides, in pertinent part:

Should it appear from the affidavits of a party opposing the motion [for determination of law] that the opposing party cannot for reasons stated present by affidavit facts essential to justify its opposition, the court ... may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had....

We review a district court's denial of a request for discovery pursuant to Rule 56(f) for an abuse of discretion. *A–1 Auto Repair & Detail, Inc. v. Bilunas–Hardy*, 93 P.3d 598, 604–05 (Colo.App.2004); *Keybank, Nat'l Ass'n v. Mascarenas*, 17 P.3d 209, 215 (Colo.App.2000). "It is not an abuse of discretion to deny a C.R.C.P. 56(f) request if the movant has failed to demonstrate that the proposed discovery is necessary and could produce facts that would preclude summary judgment." *A–1 Auto Repair & Detail*, 93 P.3d at 604; *accord Keybank*, 17 P.3d at 215.

Ms. Henisse's counsel asserted in his Rule 56(f) affidavit that he reasonably believed that additional discovery would demonstrate certain facts, including the following:

- First Transit hired the bus driver;
- First Transit performed a background check of the bus driver before hiring him;
- First Transit trained the bus driver to operate a commercial vehicle;
- First Transit directly supervised the bus driver;
- First Transit paid the bus driver's salary and benefits;
- First Transit deducted taxes from the bus driver's salary and paid his state and unemployment withholdings;
- First Transit obtained workers' compensation insurance covering the bus driver;
- First Transit supplied the bus driver's uniform and other materials related to his employment;
- First Transit required that the bus driver provide blood and/or urine samples soon after the accident as part of its substance abuse program;

• First Transit disciplined the bus driver as a result of the accident; and

• First Transit subsequently terminated the employment relationship between it and the bus driver.

Ms. Henisse's counsel did not point to any fact that could have affected the outcome of the case. None of the above facts, if true, would have contradicted those facts noted in subsection II.B above which establish that RTD had the right to control the bus driver: that the bus driver was an employee of First Transit simply did not preclude him from also being an employee of RTD. Nor would any of those facts have affected the analysis of the extent of First Transit's liability under the doctrine of respondeat superior. Therefore, the district court did not abuse its discretion in denying Ms. Henisse's request under Rule 56(f).

### III. Dismissal

Finally, we reject Ms. Henisse's contention that the district court erred in dismissing her claims against defendants once they deposited $150,000 into an interest bearing account for her benefit.

■■■ A claim is moot when a judgment would have no practical effect on an existing controversy. *Colo. Citizens for Ethics in Gov't v. Comm. for the American Dream,* 187 P.3d 1207, 1213 (Colo.App.2008); *Rudnick v. Ferguson,* 179 P.3d 26, 29 (Colo.App.2007). "A tender of judgment that does not include an admission of liability or a confession of judgment may render a claim moot where, as here, the depositing party tenders the maximum amount of recovery to which a plaintiff is entitled." *Rudnick,* 179 P.3d at 30–31; *accord Bradshaw v. Nicolay,* 765 P.2d 630, 632 (Colo.App.1988).

■■■ In *Rudnick,* the plaintiffs filed a lawsuit alleging negligence against six doctors. *Rudnick,* 179 P.3d at 28–29. The doctors were public employees for purposes of the CGIA. Before trial, five of the doctors deposited the statutory damages limit of $150,000 into the court's registry, and the district court dismissed the plaintiffs' claims against all the doctors as moot, without requiring the doctors to confess judgment, admit their liability, or enter into a settlement with the plaintiffs. *Id.* at 28–31. A division

of this court affirmed the district court's ruling, concluding that because the doctors had deposited $150,000 and made it available to the plaintiffs, a controversy no longer existed between the parties. *Id.* at 29–30. The division further concluded that no rule required the doctors to admit liability or confess judgment when they tendered the maximum amount of the plaintiffs' potential recovery into the court's registry. *Id.* at 31.

Here, defendants deposited $150,000 into an interest bearing account for the benefit of Ms. Henisse. We conclude that because Ms. Henisse could not recover more than $150,000, the district court did not err in dismissing her claims against defendants.

■■■ Ms. Henisse contends, however, that the district court erred in conditioning the payment of the $150,000 to her and precluding immediate transfer of the funds upon dismissal of her claims. We are not persuaded.

The court conditioned payment of the funds to Ms. Henisse on a favorable ruling for defendants on appeal. Ms. Henisse may therefore receive the deposited funds only upon final affirmance of the district court's rulings.

C.R.C.P. 67 establishes the procedure by which a party may deposit an undisputed sum with the court. Rule 67(a) permits

a party, upon notice to every other party, and by leave of court, [to] deposit with the court all or any part of [the tangible relief sought by another party], to be held by the clerk of the court subject to withdrawal in whole or in part at any time thereafter upon order of the court.

We review a district court's grant of leave to deposit funds under this rule for an abuse of discretion. *Rudnick,* 179 P.3d at 30.

The court did not abuse its discretion in conditioning payment of the funds to Ms. Henisse on a favorable ruling for defendants on appeal. Just as in *Rudnick,* defendants deposited the maximum amount of their potential liability to avoid the cost of litigation. It would be inequitable to allow Ms. Henisse to receive the $150,000 *and* litigate to recover additional damages. *Cf. Hetherington v. Camp Bird Mining, Leasing & Power Co.,*

70 Colo. 531, 534, 202 P. 1087, 1088 (1921) (when a party deposits funds for a specific purpose, it is entitled to return of the funds when that purpose fails).

Because we affirm the district court's judgment, Ms. Henisse will be entitled to the deposited funds once the mandate has been issued.

The judgment is affirmed.

Judge RUSSEL and Judge CONNELLY concur.